Charles E. **ROCHE**, Jr., Appellant
(Petitioner below),

v.

**STATE of Indiana**, Appellee
(Respondent below).

No. 45S00–9305–PD–588.

Supreme Court of Indiana.

Dec. 30, 1997.

Rehearing Denied May 27, 1998.

---

Susan K. Carpenter, Public Defender, Kenneth L. Bird, Marie F. Donnelly, John S. Sommer, Deputy Public Defenders, Indianapolis, for Appellant. .

Jeffrey A. Modisett, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Petitioner Charles E. Roche, Jr., appeals the denial of post-conviction relief with respect to his convictions for Murder [1] and his sentence of death.[2] We earlier affirmed

---

1. Ind.Code § 35–42–1–1 (Supp.1989).

2. Ind.Code § 35–50–2–9 (Supp.1990). Roche committed these crimes on May 5, 1990. The 1990 General Assembly amended the death pen-

Roche's direct appeal of these convictions and sentence. *Roche v. State,* 596 N.E.2d 896 (Ind.1992). We now affirm the denial of post-conviction relief.

### Background

Our earlier opinion contains a description of the crimes of which Roche was convicted. *Id.* In brief, Roche and co-defendant Edward John Niksich were tried and convicted of the murder, Felony Murder and Robbery of Ernest Graves and Daniel Brown in the basement of Roche's home. Roche's father was also a participant in the crimes. *Id.* at 897. Roche and Niksich had lured the victims to the basement by a "phony drug deal" after Roche had concluded that Graves had stolen $120 worth of food stamps from a companion of Niksich. *Id.* Roche took the stand at trial and asserted a defense of self-defense. *Id.* at 898. Following conviction, the jury recommended that Niksich not be sentenced to death. *Id.* at 897. The jury was unable to reach a recommendation on whether Roche should be sentenced to death. *Id.* The trial court sentenced Niksich to a term of years, *id.* at 899, and sentenced Roche to death, *id.* at 897.

Although not recited in our opinion on direct appeal, there was evidence at trial that the defendants had transported the victims' bodies to a remote location and that certain evidence of the crime was destroyed. (T.R. at 229; 2234.)[3] Roche's father was convicted of the same murders in a separate proceeding and sentenced to a term of years. Br. of Pet'r–Appellant at 8.

Following the conclusion of the post-conviction proceeding that is the subject of this appeal, this Court received a series of communications from Roche *pro se* seeking to waive his right to this appeal. His post-conviction counsel opposed these requests, arguing that Roche was not mentally competent to make these requests. We remanded the matter to the post-conviction court for

the limited purpose of conducting a competency hearing. The post-conviction court complied and found Roche to be competent and otherwise capable of making such a request. At approximately the same time, Roche was convicted of another offense in LaPorte Superior Court arising from an unsuccessful prison escape attempt. After appealing that conviction to the Court of Appeals, Roche filed a similar *pro se* request to waive his right to appeal. As we had done in this post-conviction case, the Court of Appeals remanded for the purpose of a competency hearing. The LaPorte court, unlike the post-conviction court, did not find Roche competent to waive his right to appeal.[4] Under these circumstances, we elect to address Roche's appeal from the denial of post-conviction relief on the merits.

### Discussion

A person convicted of, or sentenced for, a crime by a court of this state has a constitutional right to appeal that conviction or sentence directly to either this Court or the Indiana Court of Appeals. Ind. Const. art. VII, §§ 5 & 6. As noted, Roche exercised his right to a direct appeal and his convictions and sentence were both affirmed. *Roche,* 596 N.E.2d at 896. After a convicted or sentenced person's appeal, Indiana law permits such a person to seek "post-conviction relief" through a special, quasi-civil action in certain circumstances and under certain conditions. Ind.Post–Conviction Rule 1(1); *see Lowery v. State,* 640 N.E.2d 1031, 1036 (Ind. 1994) (the post-conviction remedy is not a substitute for an appeal), *cert. denied* —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995); *Weatherford v. State,* 619 N.E.2d 915, 916 (Ind.1993) (post-conviction procedures do not provide a "super appeal").

■■■ To the extent that a person seeking post-conviction relief (usually referred to as the "petitioner") has been denied post-convic-

alty statute effective March 20, 1990. 1990 Ind. Acts P.L. 1 § 354.

**3.** In this opinion, we will refer to the court before which Roche was tried for the Murder and Robbery of Graves and Brown as the "trial court" and refer to the record of that proceeding as "T.R." We will refer to the court before which

Roche's petition for post-conviction relief was tried as the "post-conviction court" and refer to the record of that proceeding as "R."

**4.** There has been no contention in either case that Roche was not competent at the time the respective crimes were committed or at the time of the respective trials therefor.

tion relief by the post-conviction court, the petitioner appeals from a negative judgment.[5] This is Roche's situation here. When an appeal is from a negative judgment, the petitioner must convince the appeals court that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995) (citing *Williams v. State,* 508 N.E.2d 1264, 1265 (Ind.1987); *Lowe v. State,* 455 N.E.2d 1126, 1128 (Ind.1983)). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Spranger,* 650 N.E.2d at 1120 (quoting *Fleenor v. State,* 622 N.E.2d 140, 142 (Ind.1993), *cert. denied,* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994)).

I

Roche presented the post-conviction court with an extensive list of alleged errors committed by his trial counsel the effect of which he claims deprived him of his constitutional right to the effective assistance of counsel. U.S. Const. amend. VI; Ind. Const. art. I, § 13. This constitutional right, which requires the effective assistance of both trial and appellate counsel, has been firmly recognized by the United States Supreme Court and this Court. *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2043–44, 80 L.Ed.2d 657 (1984); *King v. State,* 467 N.E.2d 726, 728–29 (Ind.1984). The post-conviction court refused to consider these claims on grounds that they were waived for failure to have been presented on direct appeal. In reaching that conclusion, the post-conviction court cited our general rule that issues not raised on direct appeal are not available for collateral review. In this appeal, Roche argues that if we find the claims of ineffective assistance of trial counsel waived, we should address them as issues of ineffective assistance of appellate counsel. Without expressing any opinion as to whether the claims were in fact waived, we elect to

address these claims on this basis in this case.

We analyze claims of both ineffective assistance of trial counsel and ineffective assistance of appellate counsel according to the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lowery,* 640 N.E.2d at 1048 (standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel). First, we require the defendant or petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Id.* This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Id.* at 1041 (citing *Turner v. State,* 580 N.E.2d 665, 668 (Ind.1991)). Second, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. *Lowery,* 640 N.E.2d at 1048. We will find prejudice when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable. *Id.* (citing *Best v. State,* 566 N.E.2d 1027 (Ind.1991)).

■ A petitioner claiming ineffective assistance of appellate counsel or ineffective assistance of trial counsel must show both deficient performance and resulting prejudice. The failure to establish either prong will cause the claim to fail. And where the claim is that appellate counsel was ineffective for failing to claim on direct appeal the ineffective assistance of trial counsel, the petitioner must establish both deficient performance and resulting prejudice on the part of both trial counsel and appellate counsel. Conversely, the failure to establish either prong with respect to either trial or appellate counsel will cause the entire claim to fail.

Roche contends that he was denied the effective assistance of appellate counsel because appellate counsel failed to raise on direct appeal claims that Roche was denied the effective assistance of trial counsel when

---

**5.** This is because at the trial on the petition for post-conviction relief, the petitioner has the burden of establishing any grounds for relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1(5).

trial counsel (a) during pre-trial proceedings (1) failed to obtain the severance of Roche's trial from that of co-defendant Niksich; (2) failed to secure co-counsel; and (3) failed to attend certain pre-trial hearings; (b) permitted Roche to be tried while wearing ankle restraints; (c) failed to object to jury instructions on (1) robbery and (2) self-defense; (d) during the guilt phase (1) failed to make an opening statement; (2) permitted Roche to testify in support of a defense of self-defense; and (3) did not investigate Roche's use of alcohol immediately prior to the crimes; (e) during the penalty phase failed to establish mitigating evidence with respect to Roche's (1) childhood; (2) father's influence at the time of the crimes; (3) relative culpability to that of his co-defendants; and (4) mental health; (f) failed to object to certain penalty-phase instructions; (g) permitted the trial court to dismiss the jury without making a recommendation as to Roche's sentence; and (h) rendered deficient performance during the judicial sentencing.[6]

Because the post-conviction court found claims of ineffective assistance of trial counsel waived, it did not address many of the specific items listed in the preceding paragraph. However, the post-conviction court did make certain findings from which it concluded that Roche was not denied the effective assistance of appellate counsel. Our review of the record indicates that there was evidence to support the post-conviction court's findings and conclusion as to the effective assistance of appellate counsel. The specific contentions of ineffective assistance of trial counsel which Roche argues should have been raised by appellate counsel on direct appeal are discussed in part II–A through II–H, *infra.* As a general matter, we note that appellate counsel, Mr. Stewart, testified at the post-conviction hearing that although trial counsel Mr. Holcomb assisted him on appeal, he was the final and ultimate decision maker on what issues would be raised on appeal and that he raised all the issues that he believed had merit based on his review of the record, his consultations, and his research. He further testified that he saw nothing in the record that gave rise to a claim of ineffective assistance of trial counsel.[7]

## II

### A

Roche contends that appellate counsel was ineffective for failing to claim that Roche was denied the effective assistance of trial counsel when trial counsel during pre-trial proceedings (1) failed to obtain the severance of

---

**6.** Roche also contends that it was "fundamental error" for the trial court to permit Roche to be tried wearing ankle restraints (item (b) in the preceding text); to give the jury instructions on robbery and self-defense referred to in item (c); and to give the jury the penalty phase instructions referred to in item (f). We perceive no reason for addressing the fundamental error claims independently of the ineffective assistance of counsel claims.

**7.** Appellate counsel Stewart testified as follows:

I thought the representation was very good. I thought particularly the representation was very good in the penalty phase. The jury in this case made—could not reach a recommendation as to what sentence should be imposed upon the defendant. It was my analysis, given the facts of this case, that was—that was excellent representation. He presented the evidence, there was good mitigation evidence presented at the penalty phase.

You know, I've gone the last few years to the death penalty conferences sponsored by the public defender council, and the mitigation evidence that Mr. Holcomb presented was exactly the mitigation evidence that is suppose[d]

to be presented. And he convinced the jury, or at least convinced them not to recommend death. They couldn't make a recommendation. So I saw nothing wrong with the representation. If I had, if I had seen something wrong, uh, it would have been raised, despite the fact that under the criminal rule that then existed, Mr. Holcomb was required by court rule to be co-counsel. It would have been a difficult situation, but it would have been a situation that would have to have been raised, but I saw no evidence which would establish ineffective assistance of counsel.

(R. at 1428–29.)

For his part, trial counsel Holcomb testified as follows:

I can't recall any specific conversations that I had with Mr. Stewart regarding ineffective assistance of counsel.

It's my practice to tell appellate counsel to go ahead and take a shot at me if he has to. I don't have any problems with that. I don't recall if I did in this case or not. . . .

Ethically I'm bound to cooperate fully with appellate counsel, even if appellate counsel is raising issues of ineffective assistance of coun[sel].

(R. at 1160; 1162.)

Roche's trial from that of co-defendant Niksich; (2) failed to secure co-counsel; and (3) failed to attend certain pre-trial hearings. Because we find no ineffectiveness on the part of trial counsel, we find no ineffectiveness on the part of appellate counsel.

### A–1

■ As noted in our opinion on direct appeal, Roche and co-defendant Niksich were tried together and both were convicted of two counts of Murder and two counts of Felony Murder. *Roche*, 596 N.E.2d at 897. Prior to trial, Niksich's counsel sought to have Niksich and Roche tried separately but the trial court denied the motion. Roche's trial counsel did not seek a separate trial.[8]

We find no ineffective assistance of trial counsel. In order for trial counsel to have been ineffective in failing to seek separate trials, Roche must demonstrate that a motion for separate trials would have been granted. *See Sanchez v. State*, 675 N.E.2d 306, 310 (Ind.1996) (citing *Oglesby v. State*, 515 N.E.2d 1082 (Ind.1987)); *Barany v. State*, 658 N.E.2d 60, 66 (Ind.1995). As we have recently stated in several cases, in circumstances such as this it is within the trial court's discretion to grant or deny a motion for separate trials. Ind.Code § 35–34–1–11 (1988). *See Lee v. State*, 684 N.E.2d 1143, 1147 (Ind.1997); *Lampkins v. State*, 682 N.E.2d 1268, 1272 (Ind.1997), *reh'g granted on other grounds*, 685 N.E.2d 698 (Ind.1997) As the trial court here denied codefendant Niksich's motion to sever (and there is no contention that it committed error thereby), we see little basis for concluding that if Roche's counsel had offered a counterpart

motion, it would have been granted. *Cf. Townsend v. State*, 533 N.E.2d 1215, 1231 (Ind.1989) (failure of counsel to seek separate trials for co-defendants in death penalty case not ineffective assistance of trial counsel); *Cobb v. State*, 505 N.E.2d 51, 54–55 (Ind. 1987) (failure of counsel to move for severance of charges not ineffective assistance of trial counsel).

### A–2

■ Roche was represented by one lawyer, Mr. Holcomb, at trial. He makes a brief argument that the failure of this lawyer to secure co-counsel constituted ineffective assistance of counsel. It is true that we now require co-counsel in all death penalty cases under a rule which took effect well after Roche's trial was completed. Ind.Crim.Rule 24(B) (amended effective Jan. 1, 1992). But, except for pointing out that co-defendant Niksich had two lawyers and avoided a death sentence, Roche makes no argument nor presents authority supporting this contention. Consequently, he waives appellate review. Ind.Appellate Rule 8.3(A)(7). *Cf. Bellmore v. State*, 602 N.E.2d 111, 123–24 (Ind. 1992) (defendant failed to establish that the quality of legal representation was impaired in any manner which would necessarily have been avoided by the appointment of second defense counsel).

### A–3

■ Roche argues that he was denied both the effective assistance of counsel and his right to counsel altogether because his trial counsel failed to attend certain pre-trial hearings.[9] Roche did not present these ar-

---

8. Roche's brief to this court is not clear on this point. He appears to claim that appellate counsel was ineffective for failing to claim error on the part of the trial court in denying Niksich's motion to sever. Br. of Pet'r–Appellant at 78. Such a claim would not have been available. *See Cooley v. State*, 682 N.E.2d 1277, 1281 (Ind. 1997) (claim waived for appeal where only appellant's co-defendant preserved error at trial). Because the State and the post-conviction court both treat the alleged ineffectiveness of appellate counsel as failing to claim ineffective assistance of trial counsel and because the tenor of Roche's argument is to that effect, we elect to treat it as such.

9. Each of the hearings involved in this contention were hearings on motions filed by one of Roche's co-defendants—either Niksich or

Roche's father. Several of the hearings dealt with Niksich's motion to have his trial severed from Roche's. One dealt with Roche's father's motion to have his trial severed from Niksich's and Roche's. Elsewhere in this opinion we find no ineffective assistance of counsel with respect to severance issues. *See* part II–A–1, *supra.*

One of the hearings dealt with a motion Niksich had filed to suppress evidence seized from Niksich's home. The trial court granted the motion on grounds that it had no probable cause affidavit attached. Roche makes no argument that his counsel should have opposed this motion or that he was prejudiced by it being granted. As such, he has shown no ineffectiveness by his counsel's not being present at this hearing. (Roche does argue that the warrant pursuant to which his home was searched suffered from the

guments to the post-conviction court and consequently they are not available for review here. *See Canaan v. State,* 683 N.E.2d 227, 235 (Ind.1997) (citing *Howard v. State,* 467 N.E.2d 1, 2 (Ind.1984)) (both holding that claims not advanced until appellant's brief in an appeal from the denial of post-conviction relief are waived).

### B

■ Roche was required to wear ankle restraints during at least a portion of his trial. There is no objection of record by trial counsel to the use of the restraints and no finding by the trial court justifying them. Roche contends that appellate counsel was ineffective for failing to claim that "it was unreasonable for counsel to allow his client to appear before the jury in shackles without objection." Br. of Pet'r–Appellant at 34.

During the post-conviction hearing, there was testimony and evidence offered that the ankle restraints were hidden by Roche's pants legs and that there was a drape on the table between Roche and the jury. There was testimony and evidence offered that spectators in the courtroom saw Roche in restraints and that there was no drape. However, there was no testimony or evidence that any juror saw Roche wearing ankle restraints.

It appears that the only reference in the trial record to Roche wearing ankle restraints occurs just before Roche was to take the stand. While the jury was still outside the courtroom, Roche's counsel asked the trial court to allow Roche to be seated in "the witness chair before the jury comes in so they don't see his braces." (T.R. at 2194.)

Counsel continues, "He'll have to be seated when the jury comes in so they don't see the ankle bracelets. At the point after he testifies, they can go back out so he could sit down." (T.R. at 2195.) As best as we can determine, these procedures were followed.

Conceding Roche's point that the trial court should have made a record of the reasons for requiring the restraints and that we are without post-conviction court findings on the weight and credibility of the testimony given, we nevertheless find no basis for concluding that trial counsel was ineffective in this regard. First, the record indicates that trial counsel was careful about preventing the jury from seeing his client's ankle restraints. Second, the exhaustive post-conviction investigation in this case turned up no evidence that any juror was aware of the restraints. Third, Roche makes no specific claim of prejudice as a result of the restraints.

### C

Roche contends that appellate counsel was ineffective for failing to claim that trial counsel was ineffective when trial counsel failed to object to jury instructions on (1) robbery and (2) self-defense. Because we find no error in giving either instruction, we find no ineffectiveness on the part of either appellate or trial counsel.

#### C–1

■ The trial court instructed the jury as follows:

ROBBERY is defined in Indiana by statute in pertinent part as follows:

---

same defect. But Roche does not argue counsel's ineffectiveness in this regard and, in any event, Roche's counsel moved to suppress this evidence.)

The last hearing dealt with Niksich's motion *in limine* to exclude all testimony and evidence concerning Niksich's involvement in an armed robbery that occurred three days before the crime in question. The victim there had been shot with one of the weapons used in the instant crime. Roche argues that the admission of such testimony and evidence would have enhanced the relative culpability of Niksich. As such, he argues, counsel was ineffective for failing to attend this hearing to make this argument. But the trial court did not rule on the motion at the hearing. It is true, as Roche observes, that the

State and Niksich later stipulated that "the State's evidence in an unrelated matter would show that [Niksich] was in possession of and fired a handgun three days prior to the double homicide [at issue in this case], the handgun in question here" and, as a result of this stipulation, the court announced that it would not allow the details of the prior robbery and shooting to be placed before the jury. But this was only after a lengthy hearing for which Roche's counsel was present. Roche does not argue counsel's ineffectiveness in this regard and, in any event, the result was essentially the one Roche now claims his counsel should have sought—co-defendant Niksich stipulated that he was in possession of and fired the alleged murder weapon three days prior to the instant offenses.

A person who knowingly or intentionally takes property from another or from the presence of another person by force or threat of force and while armed with a deadly weapon, commits Robbery.

(T.R. at 139.) Roche's claim is that this instruction was ambiguous because a juror might have read it to permit conviction for robbery without finding that the taking occurred by force or threat of force. Roche does not claim that the instruction was wrong as written. Rather, he contends that *if* a juror were to punctuate the instruction differently (treating the "by force or threat of force" requirement as applying only to takings from the presence of another and not to takings from the person of another), an erroneous interpretation could result.[10] We find this reasoning attenuated. The instruction as given was a correct statement of law.[11]

### C-2

As previously discussed, Roche was charged with both the knowing or intentional murders and the felony murders of the two victims. In its final instructions, the trial court told the jury that the defense of self-defense did not apply to the charges of felony murder. Roche contends that by this instruction, the trial "court itself decided against Roche[']s version of events and in favor of the State's version." Br. of Pet'r–Appellant at 140.

■ Roche's counsel was not ineffective for failing to object to the instruction. First, Ind.Code § 35–41–3–2(d)(1) (1988) specifically provides that "a person is not justified in using force if: (1) he is committing ... a crime." A person who kills while committing or attempting to commit a robbery is a person who kills while committing a crime and so the defense of self-defense is not available. The instruction was a correct statement of law. Second, we find no possible prejudice to Roche in that the trial court clearly and unambiguously instructed the jury that if they found that Roche had acted in self-defense or had a reasonable doubt about whether he acted in self-defense, then

it could not convict Roche of either of the two knowing or intentional murder counts.

### D

Roche contends that appellate counsel was ineffective for failing to claim that trial counsel was ineffective when trial counsel during the guilt phase (1) failed to make an opening statement; (2) permitted Roche to testify in support of a defense of self-defense; and (3) did not investigate Roche's use of alcohol immediately prior to the crimes. Because we find no ineffective assistance of trial counsel, we find no ineffective assistance of appellate counsel.

### D-1

■ Roche's trial counsel waived his opening statement. Roche contends that there was no strategic reason not to present an opening statement and that this allowed the jury to decide Roche's fate prior to hearing his side of the story. The right to make an opening statement is not a constitutional imperative or mandate. Roche does not point out how this omission prejudiced his defense or case in any way. We find nothing in the record suggesting that trial counsel was questioned on this point at the post-conviction hearing. It is by no means unusual for criminal defense counsel to waive opening argument for a wide variety of reasons. We have regularly held that the decision not to make an opening statement is a matter of trial strategy and will not support an ineffective assistance of counsel claim. *See, e.g., Douglas v. State,* 663 N.E.2d 1153, 1155 (Ind. 1996); *Nuckles v. State,* 560 N.E.2d 660, 662 (Ind.1990); *Miller v. State,* 541 N.E.2d 260, 263 (Ind.1989). Roche does not distinguish this authority or present any of his own.

### D-2

■ At trial, Roche testified that he alone shot the two victims in self-defense. Roche now argues that this defense was not viable and "cost Roche [ ] his last penny of hope at penalty phase—it cost Roche [ ] his credibility." Br. of Pet'r–Appellant at 35.

---

**10.** Roche does not suggest, either at the post-conviction proceeding or in this appeal, how the instruction should have been worded to preclude the potential of juror re-writing.

**11.** Roche does not argue that the jury should not have been instructed on the crime of robbery.

During Roche's very brief questioning of trial counsel on this point at the post-conviction hearing, trial counsel indicated that he put Roche on the stand in large part in preparation for the penalty phase—first, to get as much information as possible about Roche before the jury and, second, to humanize Roche in front of the jury before the penalty phase. We think few matters are embraced more by our unwillingness to second guess the trial strategy or tactics of defense counsel than the decision of whether or not a defendant testifies. Just as we have recently concluded that we would not second guess trial counsel's decision *not to* put the defendant on the stand, *Canaan*, 683 N.E.2d at 230 (citing cases), we also decline to second guess trial counsel's decision here *to* put defendant on the stand.

### D–3

Roche makes a brief argument that trial counsel failed to investigate Roche's alcohol use at the time of the offense. We do not find any basis for finding counsel ineffective in this regard. Roche himself testified at trial that, while he had been drinking, the evening's events sobered him up "right away." Trial counsel testified at the post-conviction hearing that Roche never told him that Roche was too intoxicated to appreciate what he was doing that evening. Furthermore, intoxication is not available as a defense where the acts committed require a significant degree of physical or intellectual skill such as devising a plan, operating equip-

ment, instructing others, or carrying out acts requiring physical skill. *State v. Van Cleave*, 674 N.E.2d 1293, 1303 (Ind.1996); *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984). Roche makes no attempt to demonstrate that this standard could have been met.[12,13]

### E

Roche contends that appellate counsel was ineffective for failing to claim that trial counsel was ineffective in four general respects relating to the presentation of mitigating evidence during the penalty phase of Roche's trial. We conclude that appellate counsel was not ineffective in this regard because trial counsel's performance was not deficient. We also note that counsel's penalty phase performance was sufficiently effective to prevent the jury from recommending a death sentence.

### E–1

First, Roche contends that trial counsel's performance was deficient in failing to investigate and present evidence that Roche was abused and neglected as a child and evidence of Roche's relationship with his father. We find no deficient performance. Counsel presented three witnesses —Roche's probation officer, his mother, and his sister—who testified as to his difficult upbringing. Roche's mother's testimony in this regard was particularly poignant. And some of the strongest rhetoric that Roche advances in this appeal on this claim—that "at age 5 Roche was sold to his paternal grandfa-

---

**12.** Two aspects of the trial record suggest that intoxication would not have been available as a defense.

First, Roche testified at trial that he drove an automobile home immediately prior to the time of the offenses; did not call the police after the shooting because he was previously convicted of a felony and not allowed to possess a gun; locked the door after the shootings occurred to prevent entry by neighbors; used a car with a closed truck rather than a hatchback to store the bodies; drove the car to a remote service road to dispose of the bodies; took wallets from the two victims so the victims could not be identified; and burned the victims' wallets, liner to the truck, and his own blood-stained pants.

Second, the trial court, in its sentencing order, made the following finding: Although there was evidence that the defendant was a drug abuser and had used drugs and/or consumed alcohol on the day of the crimes, there was no evidence that

this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law. The evidence was that this was a planned, thought-out killing of Ernest Graves and that the killing of Daniel Brown was calculated to avoid apprehension for the killing of Ernest Graves. The overall scenario indicated a deliberate, calculated plan that was not substantially affected or impaired by the use of drugs or alcohol.

**13.** Roche also argues that even if there was not enough evidence to establish an intoxication defense, "trial counsel could have used the information that Roche [ ] was drinking at the time of the offense at the penalty phase." Roche does not provide us with any elaboration on this point and we decline to speculate on how information on alcohol use which would be insufficient even to offer as an intoxication defense could be of material assistance at the penalty phase.

**1126** ▉

ther"—was one of the arguments made by trial counsel at trial. (T.R. at 2773.) We have reviewed the additional evidence of Roche's upbringing presented to the post-conviction court and, while it unquestionably included information not presented at trial, it adds only detail and not weight to the mitigating circumstance argued at trial. We find that trial counsel more than adequately presented the jury with at least the principal contours of Roche's background, character and record and effectively presented that information to the jury and the trial court. *See Williams v. State,* 669 N.E.2d 1372, 1385 (Ind.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997).

### E–2

▉ Second, Roche contends that trial counsel's performance was deficient in failing to argue a penalty phase theme to the effect that he had begun to turn his life around and then his father's re-emergence in his life caused his plans for a better life to spiral downward. The decision to pursue such a theme would, of course, have been a matter of trial strategy which cannot form the basis for establishing ineffective assistance of trial counsel unless there was no sound basis for not pursuing the strategy. Here counsel might have concluded that Roche's own testimony that he was selling cocaine out of his home three or four times a week and owned firearms in violation of his probation would make it difficult to argue that he had begun to turn his life around. Similarly, counsel might well have concluded that the jury would not be responsive to a claim that a 26–year old man's behavior would dramatically change upon the re-emergence of his father in his life.

### E–3

Third, Roche contends that trial counsel's performance was deficient for failing to argue the relative culpability of Niksich and Roche's father—particularly since neither received a death sentence—as a mitigating circumstance. In fact, counsel did make this argument at judicial sentencing. Counsel also argued to the jury that much of Roche's

behavior was explained by his desire to protect his father and, as such, the relative culpability of Roche for the crimes was lower. In any event, this court held that the relative culpability of Niksich and Roche's father was not relevant to Roche's sentence in Roche's direct appeal. *Roche,* 596 N.E.2d at 900.

### E–4

Fourth, Roche contends that trial counsel was ineffective for failing to secure an independent mental health evaluation. At the post-conviction hearing, three witnesses, each in extensive testimony, presented conflicting evidence on Roche's mental health. Dr. Fleming, a clinical psychologist, testified that Roche suffered from Bipolar Disorder, and that it was her opinion that Roche was having a "manic episode," the kind of which is characteristic of Bipolar Disorder, at the time of the offenses.[14] A psychologist, Dr. Caruana, and neuropsychologist, Dr. Pueschel, testified for the State at the post-conviction hearing. It was Dr. Caruana's opinion that Roche was not suffering from Bipolar Disorder or in the throes of a manic episode at the time of the offenses. It was Dr. Pueschel's opinion that Roche was not under the influence of an extreme mental disturbance at the time of the offenses. From this testimony, the post-conviction court made findings of fact and concluded that Roche did not suffer from a mental disease or defect at the time of the offenses. Our review of the extensive record on this point indicates that there was evidence to support the post-conviction court's findings of fact. And our review of the post-conviction court's findings does not lead us to an opposite conclusion than that Roche did not suffer from a mental disease or defect at the time of the offenses.

▉ That having been said, Roche argues that the post-conviction court's findings in this regard do not dispose of his claim of ineffective assistance of counsel for failure to investigate and present evidence of Roche's mental health to the jury during the penalty phase of the trial and to the trial court at sentencing. That is, Roche argues that the fact that he failed to demonstrate that he was

14. Evidence was also presented that two psychiatrists employed by the Department of Correction, Dr. Batacan and Dr. Wasserman, had also diagnosed Roche with Bipolar Disorder after his incarceration for the instant offenses.

so mentally ill at the time of the offenses that his death sentence was invalid does not resolve the question of whether he failed to demonstrate that his trial counsel failed to investigate and present mental health evidence information as mitigating evidence. We agree with Roche that there is a distinction between these two issues and that it is a distinction with a difference. That difference, as Roche points out, is illustrated by *Brewer v. Aiken,* 935 F.2d 850 (7th Cir.1991), where the court set aside a death sentence previously affirmed by this Court on grounds that counsel had failed to investigate and present mitigating evidence concerning the defendant's mental health. *Id.* at 858–59. However, we find the situation in *Brewer* different from Roche's. In *Brewer,* the defendant had an extensive documented record of mental impairment prior to his trial on the charges for which he was sentenced to death. Brewer had received several shock therapy treatments at age 10; had suffered brain damage apparently as the result of blows to the head as a young boy; and was evaluated at age 11 as "fixated at a very dependent and infantile level, a level of development that comes without any real concern or ability to control impulses, in short, self-control." *Id.* at 857–58.

Even following the extensive investigation of Roche's background by Dr. Fleming in connection with the post-conviction proceedings, Roche's record was different from Brewer's. The only medical and psychological evidence about Roche presented to the post-conviction court or relied upon by Dr. Fleming post-dated Roche's trial. It is true that Dr. Fleming testified at the post-conviction hearing that there were many aspects of Roche's childhood records from which an argument could be made that Roche suffered from mental impairment. But these aspects—*e.g.,* school records demonstrating low achievement, social service agency reports of lack of parental involvement, parental divorce records—were also evidence of Roche's unstable childhood which was presented by

counsel in mitigation. Dr. Fleming testified concerning a 1978 recommendation from a Dr. Gallenkamp to the juvenile court that Roche and his father receive psychological therapy because of the poor father-son relationship.[15] Dr. Fleming also testified that the evaluation of Roche by a Dr. Hurt when Roche was incarcerated in 1984 for burglary indicated certain "psychological problems."[16] But on cross-examination, Dr. Fleming acknowledged that neither Dr. Gallenkamp nor Dr. Hurt had diagnosed Roche with Bipolar Disorder. After reviewing the same documentation, it was the opinion of Dr. Caruana that it did not provide evidence of extreme mental or emotional condition or disturbance on Roche's part but rather antisocial behavior.

After careful review of this material, we find the documentation discussed by Dr. Fleming highly probative of Roche's difficult childhood and upbringing but only marginally supportive of a possible claim that Roche suffered from any mental impairment at the time of the offenses that would rise to the level of a mitigating circumstance. As discussed *supra,* trial counsel adequately argued Roche's childhood as a mitigating circumstance. We find he had no further duty to argue mental health.

**F**

Roche contends that appellate counsel was ineffective for failing to claim that trial counsel rendered ineffective assistance with respect to several penalty phase instructions. Because we find no error in giving the instructions, we find no ineffectiveness on the part of either appellate or trial counsel.

▬ First, Roche argues that the trial court should have instructed the jury that mitigating circumstances do not have to be proved beyond a reasonable doubt. We addressed this claim in *Miller v. State,* 623 N.E.2d 403, 409 (Ind.1993), where we held

15. As best as we can determine, this recommendation was referred to as a mitigating circumstance in the trial court's sentencing order.

16. These problems appear to have been "headaches, pains, shortness of breath, nervousness, lack of concentration, depression, hopeless outlook, short temper, annoyance at small things, thoughts of suicide;" "sleeping excessively and with headaches;" "no appetite ..., anxious[ness], nervous[ness];" "hyperactivity, inability to rest, sleep, depression ... due to administrative conflict, irritability, hostility toward the staff."

that because all jury instructions on reasonable doubt place the burden on the State, there is no inference that a defendant's evidence comes under this scrutiny. Relying on *Miller* and on the fact that nothing in the record suggests that the trial court led the jury to believe that mitigating factors must be proven beyond a reasonable doubt, we find no error in the instruction.

■ Second, Roche contends (1) the trial court failed to instruct the jury that the State bore the ultimate burden to prove that aggravating circumstances outweighed the mitigating circumstances, and (2) the court did not instruct the jury that it must recommend against death if it found the aggravating circumstances equal to the mitigation circumstances. "[T]he determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt, but is a balancing process." *Daniels v. State*, 453 N.E.2d 160, 171 (Ind.1983), *vacated on other grounds*, 491 U.S. 902, 109 S.Ct. 3182, 105 L.Ed.2d 691 (1989). Thus no instruction as to burden of proof was required. And while it is true that the trial court's instructions did not cover the possibility of exact equality of the weight of aggravating and mitigating circumstances, they did provide (a) that the jury must recommend against death if it found the State had not proved the existence of at least one aggravating circumstance beyond a reasonable doubt, (b) that the jury must recommend against death if it found that any mitigating circumstances that existed outweighed the aggravating circumstances, and (c) that the jury could recommend against death even if it found that any mitigating circumstances that existed were outweighed by the aggravating circumstances. Our death penalty statute [17] provides that the jury may recommend the death penalty only if it finds mitigating circumstances to be outweighed by aggravating circumstances and does not permit a recommendation under any other circumstances. The jury instructions were consistent in all respects with the statute. That they did not explicitly recite one logical possibility did not render them defective.

■ Third, Roche maintains that the trial court's instructions did not guide meaningfully the jury on what mitigating circumstances must be considered. Specifically, he points to the failure of the trial court to define "mitigation." We find no error in the failure of the trial court to define "mitigation" because "where terms are in general use and can be understood by a person of ordinary intelligence, they need not be defined." *McNary v. State*, 428 N.E.2d 1248, 1252 (Ind.1981). Roche also alleges that the listing of all general statutory mitigating circumstances, including ones that Roche neither alleged or relied on, invited and permitted the jury to consider and weigh the absence of evidence on these mitigating circumstances as non-statutory aggravating factors. We find no merit to this claim and determine that the trial court's instruction which contained statutory mitigating circumstances that may be considered sufficiently guided the jury. *See Baird v. State*, 604 N.E.2d 1170, 1179 (Ind.1992).

■ Fourth, Roche argues that the trial court's instructions did not mandate that the jury consider any reason not to impose the death penalty, especially the character and history of the accused. While the trial court did instruct the jury that it could consider as mitigating circumstances "any other circumstances [in addition to those listed in the statute] appropriate for consideration," Roche argues that this instruction minimized "the import and types of non-statutory mitigating circumstances by combining them into one vague subpart." We disagree with Roche's assertion. Instead, we find that the trial court's instruction that the jury was not required to impose the death penalty even if it found that aggravating circumstances outweighed mitigating circumstances was sufficient to inform the jurors of their ability to

---

**17.** Ind.Code § 35–50–2–9(e) (Supp.1990) reads in relevant part:

The jury may recommend the death penalty only if it finds:

(1) that the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances exists; and
(2) that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.

consider any reason they see appropriate not to impose the death penalty.

Fifth, Roche contends that there is a substantial probability that one or more jurors were misled to believe that they must unanimously find a mitigating circumstance before considering it. We rejected this claim in *Harrison v. State*, 644 N.E.2d 1243, 1259 (Ind.1995), and find no reason to revisit this issue.

Sixth, Roche maintains that by telling the jury that it could consider all the evidence introduced at the trial stage, the trial court effectively advised the jury that it could consider non-statutory aggravating circumstances. Ind.Code § 35–50–2–9(d) (Supp. 1990) states that if a defendant is convicted of murder in a jury trial, "[t]he jury or the court may consider all the evidence introduced at the trial stage of the proceedings, together with new evidence presented at the sentencing hearing." The instruction conformed to the dictates of the statute.

■ Seventh, Roche argues that the jury should have been instructed that they were to start their penalty phase deliberations with the presumptions that no aggravating circumstances existed and that the case did not call for the death penalty. He maintains that such presumptions are incorporated in the criminal defendant's constitutional presumption of innocence. Roche presents no authority for these propositions and the State correctly points out that in *Bellmore*, 602 N.E.2d at 126–27, we held that the trial court was not required to tell the jury that the defendant was presumed innocent of aggravating circumstances. We find *Bellmore* controls here.

G

At trial, the State sought the death penalty for both Niksich and Roche. After approximately eight hours of deliberation, as it prepared to order the evening meal, the trial court inquired as to whether the jury had reached a recommendation on the sentence for either defendant. The foreman responded that the jury had reached a recommendation as to one defendant. In response to a further question from the court, the foreman indicated that the foreman did not think the jury would be able to reach agreement as to the other defendant. The court then polled the jurors and each answered that he or she did not believe that the jury would be able to arrive at a recommendation if it were to continue deliberating. At no time during this inquiry was there any indication as to which defendant the jury had reached a recommendation or as to whether that recommendation was for or against death. The trial court indicated that it intended to dismiss the jury. Counsel for neither defendant objected. The jury recommended against death with respect to Niksich; it made no recommendation with respect to Roche.

■ Roche contends that appellate counsel was ineffective for failing to claim that trial counsel was ineffective when trial counsel failed to object to the release of the jury. This court has long held that the length of deliberation of a jury is largely within the discretion of the trial court. *Farrell v. State*, 622 N.E.2d 488, 492 (Ind.1993); *Parrish v. State*, 515 N.E.2d 516, 520 (Ind.1987); *Hinton v. State*, 272 Ind. 297, 299, 397 N.E.2d 282, 284 (1979); *Walker v. State*, 246 Ind. 386, 398, 204 N.E.2d 850, 857 (1965). It is within the discretion of the court to discharge a jury because of its inability to agree when it is apparent to the court that it cannot agree upon a verdict after ample time spent in consultation. *Hinton*, 272 Ind. at 300, 397 N.E.2d at 284 (citing *State v. Larimore*, 173 Ind. 452, 453, 90 N.E. 898, 899 (1910)).

■ Here, because it was unknown as to which defendant the jury had reached a recommendation and as to whether that recommendation was for or against death, each of the defendants and the State was in exactly the same position of uncertainty and had reason to oppose dismissal of the jury. The prosecutor and both defendants' counsel had the opportunity to observe the trial court's interrogation of the jury as to the likelihood of its ability to reach agreement in light of the time already spent in deliberation. But no objection was raised—neither by Roche's counsel nor by Niksich's counsel nor by the prosecutor—indicating that each was satisfied that the trial court was acting within its discretion. Furthermore, the record reflects that Roche's counsel expressed reservations

about proceeding without knowing whether his client was favored or disadvantaged by dismissing the jury but the trial court indicated that it would not elicit that information from the jury. (T.R. at 2790.) Roche's counsel then agreed to the dismissal of the jury only after consulting with Roche. (T.R. at 2791.) Under such circumstances, we find that Roche has not established deficient performance on behalf of his trial counsel and, as such, has not established ineffective assistance of trial or appellate counsel.

### H

In accordance with Indiana's death penalty procedures, the trial court convened the parties for sentencing several weeks after the jury had been dismissed and upon completion of a pre-sentence investigation. Roche argues that his trial counsel rendered ineffective assistance at the sentencing proceeding. He relies on our decision in *Averhart v. State*, 614 N.E.2d 924 (Ind.1993), where we granted a petition for post-conviction relief on grounds of ineffective assistance of trial counsel. Part of the basis for our decision in *Averhart* was the deficient performance of counsel at the sentencing hearing. *Id.* at 930. In *Averhart*, no evidence of mitigating circumstances was presented by the defense at either the penalty phase of the trial before the jury or the sentencing hearing before the trial court. At the sentencing hearing, defense counsel permitted the defendant and the defendant's mother to testify in "free form"—without preparation or direction from counsel—but did no further investigation nor make additional argument. We concluded that trial counsel had "naively relied upon the system for generating pre-sentence reports to produce his mitigating evidence, and then relied upon the capacity of the trial judge to discern the right result. In effect, counsel threw his client on the mercy of the court." *Id.*

▆▆▆ Roche argues that his trial counsel's performance was similar to that of trial counsel in *Averhart*. At the sentencing hearing, counsel called Roche's mother and sister to testify; both had testified at the penalty phase before the jury. Counsel then made an argument to the court that it should re-

consider its earlier denial of Roche's post-trial motion to impanel a new jury. Roche goes on to focus on the trial court's conclusion that Roche was the most culpable of the three defendants and argue that trial counsel should have offered additional evidence of Roche's mental illness and "bizarre, protective" relationship with his father to confront this analysis.

We find counsel's performance at the sentencing hearing superior to that which caused us to grant post-conviction relief in *Averhart*. First, mitigating evidence was presented at the penalty phase before the jury. Second, while the same witnesses were used at the sentencing phase, their testimony was by no means "free form;" counsel questioned both at some length. Furthermore, the evidence presented to the jury during the penalty phase had been sufficiently persuasive to prevent a recommendation of death. And counsel's argument to the court went beyond a request for impaneling a new jury. He argued that death was not appropriate because Roche had been the victim of an improper upbringing (including being "sold" to his grandfather); because the jury had not recommended death (arguing at length that a rule should apply here similar to that used in cases where a jury recommends against death); because a death sentence would be disproportionate here where Niksich had not been sentenced to death despite instigating the events; and because the victims bore some responsibility for their fate by voluntarily embarking on an illegal drug deal. The difference between *Averhart* and this case is borne out by the fact that in *Averhart*, the trial court found no mitigating circumstances to exist at all, *see Averhart v. State*, 470 N.E.2d 666, 696 (Ind.1984); here the trial court found mitigating circumstances in Roche's lack of significant history of prior criminal conduct, extremely unstable childhood resulting in psychiatric treatment at age twelve,[18] and abuse of both drugs and alcohol.

### III

Roche contends that the magistrate conducting his post-conviction proceeding committed errors which denied him a full and fair post-conviction hearing. He seeks re-

**18.** *See* note 15, *supra*.

mand so that the following matters can be addressed to his satisfaction.

A

Roche maintains that the trial court denied him the opportunity to present evidence at his post-conviction hearing. We have reviewed those portions of the record to which Roche points us to demonstrate the asserted denial of the opportunity to present evidence. At a pre-hearing conference, the trial court instructed Roche that he and the State would be expected to present the testimony of their respective witnesses by affidavit except for trial counsel and experts. When the hearing began, Roche attempted to use the affidavits, rather than live testimony, as evidence. The State's hearsay objection was sustained. It appears to us that Roche took the trial court's pre-hearing instructions on affidavits to mean that live testimony would not be permitted except for trial counsel and experts. It also appears to us that the trial court's instructions were not meant to address the question of who would testify at trial but rather as a management technique designed to permit both sides to be informed fully in advance of trial as to what witnesses might be called and what their testimony would be. Based on our review of facts surrounding this contention, we conclude that it is the result of either a misunderstanding on Roche's part or a miscommunication on the trial court's part.

 A trial court enjoys broad discretion in the conduct of a proceeding. *See Williams,* 669 N.E.2d at 1378 (citing cases); *Farrell,* 622 N.E.2d at 492 (citing *Proctor v. State,* 584 N.E.2d 1089, 1091 (Ind.1992)). We will not find error on the part of the trial court's conduct of a proceeding in the absence of a clear violation of procedural rule or unfair prejudice. Here Roche identifies

no specific rule of procedure as having been violated. And while Roche maintains that the trial court's rulings in this regard created "confusion, adversity and surprise," Br. of Pet'r–Appellant at 110, he does not contend that they caused him prejudice. In particular, while Roche identifies portions of certain affidavits that he was prevented from offering into evidence, he does not contend that he was prevented from presenting live testimony from any of the affiants. We find the trial court's conduct in this regard to have been within its discretion and not unfairly prejudicial to Roche.

B

 Roche claims that the trial court precluded his counsel from properly investigating any claims of potential juror misconduct or exposure to prejudicial extraneous information. It is true that the trial court required that it be notified prior to any contact with former jurors and required that they be contacted only by means of a letter pre-approved by the trial court. Roche says this procedure (contact only by pre-approved letter) improperly foreclosed him from conducting an adequate investigation into any juror issues.[19] But Roche does not contend (and we find nothing in the record that shows) that he objected to this procedure. Under these circumstances, he cannot now maintain that the trial court precluded him from investigating juror behavior.[20] Ind.Trial Rule 59(A) (only issues appropriately preserved during trial are grounds for appeal); *see, e.g., Daniel v. State,* 526 N.E.2d 1157, 1162 (Ind.1988) (party's failure to object waived appellate review).

C

Roche maintains the post-conviction court erred in denying several motions to compel discovery from the State.

**19.** Roche contends that the trial court's statement that it considered it "to be improper for an attorney to have contact with a juror about their duty as a juror," violated *Koo v. State,* 640 N.E.2d 95, 104 n. 6 (Ind.Ct.App.1994). The *Koo* footnote said that the prohibition on *ex parte* communication with jurors does not extend to a juror once that person is excused from jury duty. However, the fact that the prohibition on *ex parte* communication with jurors does not extend to a juror once that person is excused is a different matter from what it at issue here—protection of

the former jurors' interests in privacy and response. Such protection is a legitimate concern of the trial court. *Matheney v. State,* 688 N.E.2d 883, 894 (Ind.1997).

**20.** We note that at one point in the record the post-conviction court, without contradiction from Roche, says that Roche has "had the opportunity to speak with all the jurors." (R. at 1698.) At a later point in the record, Roche's counsel indicated that two jurors had in fact been interviewed. (R. at 1903.)

### C–1

Roche sought "the prosecutor's entire files regarding the co-defendants/key witnesses, and, regarding Roche['s] specific file: the State's notes from trial and 'intake sheets ref. filing the instant charges, attorney notes on jury questionnaires, phone message pad notes, letters from [the State's] victim department to witnesses, and copies of press releases.'" Br. of Pet'r–Appellant at 114. The State did not comply and the trial court denied Roche's request to compel discovery of this information. (R. at 1094.)

In this respect, Roche's claim is similar to that recently considered by the New Jersey Supreme Court in an analogous proceeding. *State v. Marshall,* 148 N.J. 89, 690 A.2d 1 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997). As part of Robert Marshall's effort to secure post-conviction relief from his murder conviction and death sentence, he sought to inspect the State's entire file. The post-conviction court denied the request but permitted Marshall to request the right to inspect specific documents believed to be in the State's possession. Following that procedure, Marshall requested and received approximately one hundred documents from the State. On appeal from the denial of post-conviction relief, Marshall contended (as Roche does here) that the post-conviction court's decision not to order the State to allow him to inspect the State's entire filed "denied him his right to a full and fair PCR hearing." *Id.,* 690 A.2d at 91.

The New Jersey high court first concluded that neither its post-conviction rules nor its criminal rules authorized the discovery requested by Marshall. *Id.* In addition, the court found no constitutional basis for his asserted right to inspect. *Id.* Pointing out that both New Jersey and other jurisdictions nevertheless recognize a trial court's inherent power to order discovery, *id.* (citing cases), the New Jersey court then proceeded to enunciate the following principles concerning discovery in post-conviction proceedings:

We anticipate that only in the unusual case will a PCR court invoke its inherent right to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he brings to the PCR court's attention. Moreover, we note that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." *People v. Gonzalez,* 51 Cal.3d 1179, 275 Cal.Rptr. 729, 776, 800 P.2d 1159, 1206 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). The filing of a petition for PCR is not a license to obtain unlimited information from the State, but a means through which a defendant may demonstrate to a reviewing court that he was convicted or sentenced in violation of his rights.

Moreover, consistent with our prior discovery jurisprudence, any PCR discovery order should be appropriately narrow and limited. "[T]here is no postconviction right to 'fish' through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist." *Gonzalez, supra,* 275 Cal.Rptr. at 775, 800 P.2d at 1205; *see Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.), *cert. denied,* 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); *State v. Thomas,* 236 Neb. 553, 462 N.W.2d 862, 867–68 (1990). However, where a defendant presents the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged, the court has discretionary authority to grant relief. *See Rules Governing Section 2254 Cases in the United States District Courts,* 28 U.S.C.A. § 2254 Rule 6(a); *[State v.] Lewis,* [ ] 656 So.2d [1248,] 1250; *[People ex rel. Daley v.] Fitzgerald,* [123 Ill.2d 175, 183] 121 Ill.Dec. [937,] 941, 526 N.E.2d [131,] 135 [ (1988) ] (noting that "good cause" standard guards against potential abuse of PCR discovery process).

*Marshall,* 690 A.2d at 91–92 (citations to New Jersey authority omitted).[21]

---

**21.** The federal courts take an approach similar to discovery in *habeas corpus* proceedings as that described by the New Jersey court for post-con-

viction proceedings. *See Rules Governing Section 2254 Cases in the United States District Courts,* 28 U.S.C.A. § 2254 Rule 6(a); *Harris v.*

 Roche's contention assumes that the Indiana Trial Rules govern discovery in post-conviction proceedings.[22] We assume (without deciding) that they do. Even so, the management of discovery under the Trial Rules is within the sound discretion of the trial court. *See Wallace v. State,* 553 N.E.2d 456, 464 (Ind.1990); *Taylor v. State,* 468 N.E.2d 1378, 1383 (Ind.1984). We will not reverse a trial court's decision on discovery absent an abuse of discretion. *Id.* In this regard, we find the observations of the New Jersey court (and the authority from other jurisdictions upon which it relies) useful in determining the post-conviction court's degree of discretion in ruling on motions to compel discovery. That is, we agree that in most circumstances, the post-conviction petitioner will be fully informed of the documentary source of the petitioner's claims and that it is an abuse of the post-conviction process to use it to investigate possible claims rather than vindicate actual claims. *See Marshall,* 690 A.2d at 91 (*citing Gonzalez,* 275 Cal. Rptr. at 776, 800 P.2d at 1206).

 Roche contends that the post-conviction court abused its discretion because his inability to have full access to the State's files "improperly" denied him the opportunity to litigate fully (i) claims arising under *Brady v. Maryland* and (ii) claims regarding ineffective assistance of counsel. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny (notably *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)), impose an affirmative duty on the prosecution to disclose to a criminal defendant known favorable evidence that rises to a material level of importance. Roche does not claim a *Brady* violation. Rather, he argues that had he been provided all of the prosecutor's files from his trial and all of the prosecutor's files on each of his co-defendants and all of the prosecutor's files on each of the key witnesses in his and their cases, he might have found a *Brady* violation that he could have litigated in his post-conviction proceeding. But, as the New Jersey court pointed out in *Marshall,* discussed *supra,* no rule of constitutional law or state procedure mandates unfettered access to the prosecution's files in the hopes that a violation of the prosecutor's duty under *Brady* will be uncovered. *See Kyles,* 514 U.S. at 437, 115 S.Ct. at 1567 ("We have never held that the Constitution demands an open file policy (however such a policy might work out in practice), and the rule in *Bagley* (and hence in *Brady* ) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate").

Our analysis of Roche's ineffective assistance of counsel argument is essentially the same. He does not contend that there is any specific information in the State's files that supports his claims of ineffective assistance of counsel, only that if he had been able to examine the files he sought, he might have found instances of ineffective assistance of counsel that he could have litigated in his post-conviction proceeding. This appears to us to be no more than an assertion of a post-conviction right to investigate possible claims, not vindicate actual claims. *See Marshall,* 690 A.2d at 91 (*citing Gonzalez,* 275 Cal.Rptr. at 776, 800 P.2d at 1206). The post-conviction court acted within its discretion in denying the motion to compel this discovery.

### C–2

Roche served interrogatories on the State purportedly seeking information needed to

---

*Nelson,* 394 U.S. 286, 295, 300, 89 S.Ct. 1082, 1088–89, 1091, 22 L.Ed.2d 281 (1969); *see also Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987) (§ 2254); *Smith v. United States,* 618 F.2d 507, 509 (8th Cir.1980) (§ 2255). We find this authority instructive but do note that, at least in the § 2254 context, federal jurisprudence is infused with federalism interests that may make it inappropriate for state court use.

**22.** We have generally considered the applicability of the Trial Rules to post-conviction proceed-ings on a case-by-case basis. *See, e.g., Van Meter v. State,* 650 N.E.2d 1138, 1138 (Ind.1995) (T.R. 60(B) inapplicable in post-conviction proceedings); *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995) (T.R. 52(A) applicable); *State ex rel. Whitehead v. Madison Circuit Court,* 626 N.E.2d 802, 803 (Ind.1993) (T.R. 76(B) inapplicable); *Mickens v. State,* 596 N.E.2d 1379, 1381 (Ind. 1992) (T.R. 59(G) applicable). Certain of our Trial Rules make specific reference to post-conviction proceedings. *E.g.,* T.R. 53.1(B); 79(L).

prepare for the deposition of the State's witness, Dr. Douglas Caruana. Roche then asked the post-conviction court to compel the State to answer the interrogatories. He advises us in his brief that the post-conviction court denied this request in a telephone call, "effectively preclud[ing] Roche [ ] from discovering the nature of Caruana's evaluation and opinion prior to the hearing." Br. of Pet'r–Appellant at 117.

Assuming that the request to compel was denied, the record does not contain a copy of the interrogatories and Roche does not provide us with one. Furthermore, as best as we can determine, Roche did depose Dr. Caruana before the hearing. In these circumstances, Roche cannot maintain that the post-conviction court precluded him from preparing adequately for Dr. Caruana's testimony.

### C–3

■ Included in interrogatories served by Roche on the State was an inquiry as to why the State did not seek the death penalty for Roche's father who, as discussed *supra*, was also a participant in the crime. The State objected to answering the question and Roche asked the post-conviction court to compel a response.

In appealing the post-conviction court's denial of his request to compel, Roche argues that his father "was equally culpable and the State did not seek the death penalty. Roche [ ] is entitled to know why." Roche presents no authority for this proposition, nor does he elaborate on it other than to contend, again without authority, that a prosecutor "should not be allowed to hide critical decisions in a veil of secrecy." In the absence of any authority, we decline to impose an obligation upon the prosecutor to disclose the basis for its decision not to seek the death penalty in Roche's father's case. Furthermore, it appears that the purpose of seeking this information is to support a claim that Roche's death sentence was invalid because it was disproportionate to his father's. *See* R. at 1093–94. We rejected such a claim in Roche's direct appeal. *See Roche,* 596 N.E.2d at 900. To the extent this information was sought to support a claim of disproportionality, the claim would have been barred by *res judicata. See also* part II–E–3, *supra.*

### D

Roche contends that the post-conviction court erred in excluding the following exhibits: records from the Department of Correction; records from the United Methodist Children's Home; records from the Illinois Department of Children and Family Services; a divorce decree; the transcript of Roche's father's trial; and the transcript of Roche's co-defendant's attempted murder trial.

■ The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on review unless there was an abuse of discretion on the part of the trial court. *Woods v. State,* 677 N.E.2d 499, 504 (Ind.1997) (citing *Barnes v. State,* 634 N.E.2d 46, 48 (Ind. 1994)). Roche makes no argument that the exclusion of this evidence violated any evidentiary rule nor even any argument as to why they should have been admitted. In such circumstances, we cannot find that the post-conviction court abused its discretion in excluding the evidence. Furthermore, these exhibits are included in the record on appeal. To the extent that Roche has asserted their relevance as to any claim on appeal, we have had them available for our review.

### E

■ Roche contends that the post-conviction court's judgment was unconstitutional. He argues that the magistrate in this case performed certain judicial functions that may only be performed by judges. This, he argues, violated both the judicial article of the Indiana Constitution, Ind. Const. art. VII, § 1, and the due process guarantees of the federal and state constitutions. U.S. Const. amend. XIV, § 1; Ind. Const. art. I, § 12. The same claim was raised in a recent post-conviction relief case, *Matheney,* 688 N.E.2d at 894–96, and decided against the petitioner. As in *Matheney,* the magistrate here acted pursuant to Ind.Code §§ 33–4–7–4, –7 & –8, to conduct the preliminary proceedings and

the hearing as a gatherer of facts. Roche's counsel was instructed from the outset that Judge Conroy had overall responsibility for the case ("the way we work the magistrate's position here, the judges don't rubber stamp") (R. at 947) and Judge Conroy issued the final appealable order (R. at 917). We hold the post-conviction court's judgment was constitutional.

## IV

Roche contends that the post-conviction court erred in its rulings related to his allegation that "gross systemic defects in Lake County's system for indigent criminal defense representation rendered his trial and appellate counsel ineffective." The post-conviction court went on to deny the claim, in part for failure to present evidence of the claim specific to Roche's case.

In this appeal, Roche argues that the post-conviction court erred in denying his motion for a change of judge and venue and in dismissing his claim that the Lake County indigent defense system, as it existed in 1990, suffered from gross systematic defects. He asks that this claim be remanded for an evidentiary hearing outside the Lake County judicial system. Because we see no basis on which such a claim could succeed on the merits, we deny the request for remand.

■ Roche's claim is grounded in the *dicta* of *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984), that suggests that there will be certain circumstances where the court will presume the ineffective assistance of trial counsel without requiring the appellant from a criminal conviction or sentence to meet his or her burden under *Strickland*.[23] *Cronic* speaks in terms of a presumption and we think it is properly understood as such. Here the surrounding circumstances, including the actual performance of trial and appellate counsel in this specific case, rebut any claim of general presumption.

23. We recently discussed the operation of the *Cronic* exception to *Strickland* (and its narrowness) in *Games v. State*, 684 N.E.2d 466, 478–80

*Conclusion*

We affirm the post-conviction court's denial of Roche's petition for post-conviction relief.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

(Ind.1997), *reh'g granted on other grounds*, 690 N.E.2d 211 (Ind.1997).