**Phillip SHULL, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 2–780A214.

Court of Appeals of Indiana,
Fourth District.

March 17, 1981.

Rehearing Denied Sept. 10, 1981.

M. Anne Wilcox, Ralph Ogden and J. William DuMond, Wilcox, Ogden & DuMond, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Asst. Atty. Gen., Indianapolis, for plaintiff-appellee.

## MEMORANDUM DECISION

YOUNG, Presiding Judge.

Phillip Shull was charged by a grand jury indictment with child molesting. He was tried to the court and convicted on November 13, 1979. On February 7, 1980, sixty-two days after sentencing, Shull's court appointed counsel filed a motion to correct errors. Despite the tardiness of the motion, the trial court overruled it. The trial court then appointed Shull's present counsel to perfect an appeal. Appellate counsel filed a petition requesting permission to file a belated motion to correct errors. The trial court granted permission, and the belated motion was timely filed. This motion alleged, in part, that Shull had been denied effective assistance of counsel at trial. Counsel requested a hearing on this question; however, none was granted before the court denied the motion.[1] This appeal followed. We reverse.

Before examining Shull's sole allegation on appeal of incompetency of his trial counsel in detail, we note our standard of review in cases where ineffective assistance of counsel has been alleged.

The Sixth Amendment to the United States Constitution provides in pertinent part:

> "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

---

1. Because Shull has chosen to raise this issue on his direct appeal, we must decide this question solely on the record of this cause. No additional evidence was presented on this question. TR. 59(G)(1). *Duncan v. State*, (1980) Ind., 400 N.E.2d 1112, 1114. *Compare Duncan* and *Cowell v. State*, (1981) Ind., 416 N.E.2d 839. A defendant is entitled to a hearing in a post-conviction relief proceeding where additional evidence may be presented. The defendant has the burden of proof by a preponderance of the evidence standard. The remedy is *not* a substitute for a direct appeal. Ind.Rules of Procedure, Post Conviction Rule 1.

The Indiana Constitution in Art. I, § 13, provides in part:

"In all criminal prosecutions, the accused shall have the right . . . to be heard by . . . counsel . . ."

Both constitutions guarantee defense counsel who will actually provide professional legal assistance and be heard from.

In *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811, the appellate approach in dealing with this issue was presented:

"Counsel is presumed to have prepared and executed his client's defense effectively. *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70; *Robbins v. State*, (1971) 257 Ind. 273, 274 N.E.2d 255. This presumption is rationally grounded in the educational and other requirements for the admission to the practice of law, but is rebuttable by strong and convincing proof. *Robbins v. State, supra.* In resolving the issue, a court should consider the totality of the circumstances surrounding counsel's pretrial preparation and the actual conduct of the trial. *Lowe v. State*, (1973) 260 Ind. 610, 298 N.E.2d 421; *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686; *Sargeant v. State*, (1973) 157 Ind.App. 173, 299 N.E.2d 219. Perfunctory representation is not enough. *Wilson v. State*, (1943) 222 Ind. 63, 51 N.E.2d 848; *Castro v. State*, (1925) 196 Ind. 385, 147 N.E. 321. Counsel must have reasonable time for pre-trial preparation. *Hartman v. State*, (1973) 155 Ind.App. 199, 292 N.E.2d 293. Deliberate choices made by counsel for some contemplated tactical or strategic reason which turn out to be detrimental to the client's cause do not establish ineffective representation. *Henry v. Mississippi*, (1965) 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; *Lowe v. State, supra.*" 263 Ind. at 621, 335 N.E.2d at 814.

*Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215, 1216.

▮ We initially note that each error of counsel individually may not be sufficient to prove ineffective representation; however, the errors collectively illustrate the denial of his right to effective assistance of counsel. In applying the mockery of justice adequacy standard this Court must always look to the totality of the circumstances, *Hollon v. State*, (1980) Ind., 398 N.E.2d 1273, which would include consideration of the cumulative effect of counsel's errors. *White v. State*, (1981) Ind. App., 414 N.E.2d 973. Here, we have reviewed the entire record and conclude Shull was denied effective assistance of counsel based upon the totality of counsel's mistakes. While the individual isolated mistakes may not be grounds for reversal, the totality of these circumstances requires reversal. Defense counsel destroyed the credibility of his client much like a successful prosecution would have tried to do. Further, the credibility of State's witnesses was bolstered instead of attacked. At times one wondered who defense counsel was representing. We do not believe Shull received the effective assistance of counsel due him.

We set out several of counsel's actions, the cumulative effect of which reflect the ineffectiveness of counsel.

First, counsel on cross examination as set out below, apparently was attempting to impeach the complaining witness by establishing that she did not like him and had reason to seek revenge.

Q. O.K. Now have you ever been angry with Phillip Shull?

A. Yes.

Q. And why have you been angry with him?

A. Because he's, when he has whisky, I don't like the smell of whisky and beer and he poured it on me, that's one, and he's hit my mom before.

Q. How long did Mr. Phillip Shull stay with you and your mom?

A. About two or three weeks.

Q. O.K. Now did you like for him to stay there?

A. No.

Q. O.K., you didn't want him to stay there?

A. No.

Q. O.K., now has it been better since he has not been living with your mom?

A. Yes.

Q. O.K., he hit your mom?

A. Yes.

Q. Do you know why he hit your mom?

A. No. I guess because, he was drunk at the time.

Q. O.K., he got drunk. How many times did he get drunk while he was staying at your house?

A. Every night.

Q. O.K., and you don't like whisky?

A. No.

Q. How many times did he hit your mom?

A. Every time he got drunk he started hitting on my mom and us.

Q. He got drunk every night, did he hit your mom every night?

A. Not every night, just when he got, just when he got, uh, real drunk.

Q. Do you know what drugs are, Brenda?

A. Yes.

Q. Do you know if Mr. Shull used drugs?

A. Yes.

Q. Did you ever see him use drugs?

A. Yes.

Q. O.K. What did you see him do?

A. Well one day he went in my bedroom and I left my curtain open 'cause he was in there every day, while my mom was next door talking, giving Nancy our rent money and talking to her, and I left the door open once and he had this needle and cotton ball, this little tube with a needle in it and shooting it into this girl's arm, and his arm.

Q. Who was this girl?

A. I forgot her name.

Q. Was it a friend of your mom's or a friend of Phillip's?

A. A friend of his.

Q. O.K. Now did Mr. Shull ever do anything bad to your brothers?

A. Yes.

Q. Was he mean to them?

A. Yes.

Q. What did he do to your brothers?

A. He whipped them without my mom's permission and, uh, he poured beer on them too, and they didn't like it.

Q. Was the beer cold when he poured the beer on your brothers?

A. Yes.

Record 132–34.

Also, counsel's cross-examination of Sgt. Green illustrates his inadequacy, specifically the following exchange:

Q. In your police work with regard to sex crimes, Detective Green, Detective Sergeant Green, forgive me, have you ever, do you have an opinion as to whether or not some children would lie about this type of situation as a means of getting revenge with regard to a certain individual?

A. Yes—

. . . .

Q. O.K., and what is that opinion, sir?

A. I have had experience that children have not told the truth regarding sometimes reports we've received.

Q. Do you feel that Brenda O'Keefe is telling the truth?

A. Yes, sir, I do.

Q. And why do you think that?

A. During the course of my assignment, I have interviewed many juvenile victims of crimes. Her, her general attitude at the time I interviewed her was consistent with a child who was a victim of a sexual assault, her answers to me were embarrassed but direct and truthful, I asked her if she knew the difference between the truth and a lie, right and wrong, good and bad, I believed her when she said that she did. I asked her to give me some examples, and the examples she gave, good examples, I can't remember what they are, right now. I told her that as long as we were in the

room, that only she and I would know if she was not telling the truth, and that I wouldn't tell on her, and she still maintained that she was telling the truth and I told her that if she was not telling the truth, that she would be punished very harshly, and did she understand that; she said she did, and after I had tried all the ploys that I use on a child victim, I questioned her again, and tried to determine if there was a difference in the first story from the second story, I actually questioned her three times, and then, but there, there wasn't a difference as far as what she told me the first time and the second time and the third time.....

Record 163–65. Clearly, the last two answers were damaging.

Also, Shull presents two situations in which counsel made an objection different from the one Shull's present counsel believes would have been proper; and one situation in which trial counsel made no objection.

Because the totality of the circumstances set out above so permeated the trial, we conclude Shull was denied his right to effective assistance of counsel rendering the proceedings a mockery of justice. For this reason we reverse and grant defendant a new trial.

CHIPMAN, J., concurs.

MILLER, J., concurs in result with opinion.

MILLER, Judge, concurring.

I concur in the result reached by the majority and presume that, upon retrial, the State will present available evidence, (such as sibling eyewitness accounts and a police report indicating an investigation was made at the victim's house on the day of the alleged attack) tending to support what was, at the original trial, the wholly uncorroborated testimony of the victim concerning both the alleged molestation and her immediate complaint of the incident.