Rodney WILLIAMS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1284S475.

Supreme Court of Indiana.

June 16, 1987.

Clifford M. Davenport, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

The attorney who represented appellant Rodney Williams at trial sought to withdraw just ten days before trial. Although the court denied the motion, counsel did nothing to prepare for trial during the following five days and did not present evidence on behalf of his client. Williams claims that he received ineffective assistance of counsel in violation of the Sixth Amendment. He is correct.

Williams was convicted of robbery, a class A felony, Ind.Code § 35-42-5-1 (Burns 1979). He was sentenced to an enhanced term of forty years in prison. His conviction was affirmed on direct appeal. *Williams v. State* (1981), 275 Ind. 603, 419 N.E.2d 134.

This appeal arises from the trial court's denial of a petition for post-conviction relief in which Williams alleged that he was denied the effective representation of counsel at trial and on direct appeal. The post-conviction court found that claim unpersuasive and denied his petition. Williams, as petitioner, had the burden of establishing his grounds for relief by a preponderance of the evidence. Rule PC 1, § 5, Ind. Rules of Procedure for Post-Conviction Remedies. To prevail on appeal from denial of post-conviction relief, Williams must satisfy this Court that the evidence as a whole leads unerringly and unmistakingly to a conclusion opposite to that reached by the trial court. *Lowe v. State* (1983), Ind., 455 N.E.2d 1126.

Williams was accused of forcibly taking a purse from a woman in her parked car on February 21, 1978. He was arrested five days later. Williams was unemployed and without funds, so on March 8 the court appointed a public defender to represent him. Williams' mother, Dora Williams, subsequently sought the services of a private attorney to represent him. Mrs. Williams, a domestic worker, gave the attorney $100 and agreed to give him an additional $50 per week until the remainder of his fee was paid. It is undisputed that she failed to make any of the promised payments. In a letter to Williams dated May 17, 1978, counsel stated that he could no longer represent Williams: "I simply cannot afford to spend the time to defend those kind of charges for $100.00."

Mrs. Williams testified at the post-conviction hearing that she stopped making payments at her son's request because he said that counsel no longer was on the case. At the time, counsel had not entered an appearance on Williams' behalf, and the public defender had been appearing with Williams in court.

Trial counsel testified at the post-conviction hearing that he "must have" received additional money or further assurances of payment from the Williams family sometime between May 17 and June 1, 1978. Those actions prompted him to file an appearance on behalf of Williams on June 1, 1978. Thereafter, the public defender ceased representing Williams. Williams and his mother testified at the post-conviction hearing that they believed private counsel was not representing Williams in June 1978 and that they did not authorize him to make an appearance.

Counsel failed to attend a June 23rd hearing on the State's motion to amend the information by interlineation. However, he filed a notice of alibi on July 11th. He also attended a pre-trial conference on July 13th at which he assured the trial court that he would remain in the case if the court granted his motion for continuance of the July 20th trial date. The continuance was granted. Counsel made several court appearances with Williams over the next three months and filed a motion for change of judge on September 1.

Counsel never received any payment other than the original $100 from the Williams family, despite their fee agreement. On November 3rd, he filed a motion to withdraw for failure to pay fees. A hearing on the motion was scheduled for November 8th, but counsel reported that he was ill

and could not attend. The trial court nonetheless proceeded to deny the motion, ruling that it was untimely in light of the scheduled November 13th trial date.

On the first day of trial, counsel renewed his motion to withdraw, stating that he was unprepared to represent Williams because Williams had lacked the money to finance a proper investigation and defense. He said Williams' poverty prevented him from deposing the State's witnesses and two crucial alibi witnesses from Chicago. (Trial counsel explained in the post-conviction hearing that the alibi witnesses had indicated that they had no money to travel to Indianapolis for the trial, and Williams' own indigency prevented him from providing those funds.) Counsel said he had not even interviewed any of the State's witnesses.[1]

In light of the obstacles which Williams faced in presenting a defense, his attorney argued that failure to grant a continuance and appoint a public defender before trial would deny Williams due process of law. The trial court again denied the motion to withdraw, noting that the case had been pending for more than eight months, that counsel had filed his appearance in the case more than five months earlier and that the questions raised by defense counsel's request should have been raised long before the first day of trial.

The trial proceeded. Testimony showed that the victim and another witness had viewed a photographic array immediately after the crime and had identified Williams as the robber. The victim also identified Williams as her attacker during a pre-trial line-up and in court. The State established that the robber attempted to flee in a car belonging to a member of Williams' family and that Williams was driving the same car

when he was arrested. Defense counsel aggressively pursued evidentiary objections and cross-examination of the State's witnesses. However, he rested the defense case without presenting any evidence, despite the earlier notice of alibi.

Williams had provided the names of the two alibi witnesses to his private attorney in March. Williams claimed that those witnesses could testify that he was staying with them in Chicago when this crime occurred. Counsel contacted the two witnesses, but he was unable to interview them at length.[2] They told him that they could not afford to travel to Indianapolis, according to counsel. By the time of the post-conviction proceeding, one of those witnesses, Junior Johnson, had died. The other witness was living in Ann Arbor, Michigan; her absence from the hearing was not explained. However, Joyce Johnson testified at the post-conviction hearing that she saw Williams in Chicago several times between February 19 and February 25, including the day of the crime in Indianapolis. She conceded, though, that she did not see Williams at 4 a.m. that day, leaving open the possibility that Williams could have travelled to Indianapolis after seeing Joyce Johnson and returned to Chicago after committing the robbery.

To succeed on a claim of ineffectiveness of counsel, appellant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Appellant also must prove that counsel's failure to function was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet his

---

1. His later explanation was that the State would not allow him to use a tape recorder and the State's witnesses would not have spoken to him outside the presence of the prosecutor. Counsel indicated that such interviews would have been meaningless unless they resulted in a written statement taken under oath, despite the fact that his only recounting of the crime came from police reports lacking any detailed statements from the victim or other witnesses.

2. While trial counsel did not name the alibi witnesses during the post-conviction hearing, he apparently was referring to Williams' cousins, John V. "Junior" Johnson and his mother, Clemmie Johnson. Joyce Johnson, the mother of Junior Johnson's daughter, testified at the post-conviction hearing that Williams was staying with his cousins in Chicago from February 19 through at least February 25, 1978.

burden, appellant must overcome by strong and convincing evidence a presumption that counsel has prepared and executed his client's defense effectively. *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

■ Ineffectiveness of counsel revolves around the particular facts of each case. This Court will not speculate about what may have been the most advantageous strategy, and isolated bad tactics or inexperience does not necessarily amount to ineffective assistance. *Mato v. State* (1985), Ind., 478 N.E.2d 57. Nonetheless, perfunctory representation does not satisfy the mandates of the Sixth Amendment. *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811.

■ The undisputed facts, standing alone, clearly establish that Williams received ineffective assistance. Williams' attorney stated both before the trial court and in the post-conviction proceeding that he was unprepared to represent Williams at trial. He admitted his failure to interview any of the State's witnesses. His only contact with the alibi witnesses was by telephone, and he failed to subpoena any of them. Despite his knowledge that these witnesses would not attend the trial without the provision of travel funds, which Williams did not have, counsel failed to inform the court of this predicament until the first day of trial. Likewise, counsel did not indicate that Williams required public funds for depositions until the morning of trial, although he regarded deposing both the alibi witnesses and the State's witnesses as necessary for a proper defense.

■ The record reveals no additional investigation or preparation by Williams' attorney during the five days between the ruling on his motion to withdraw and the first day of trial. Such inaction is particularly disturbing in light of the possible seventy-year prison sentence Williams

faced upon conviction.[3] While we appreciate counsel's frustration in having to represent a client who had breached an employment agreement, it does not justify his apparent refusal to invest any time in preparing an adequate defense for Williams once the motion to withdraw was denied. The Code of Professional Responsibility and the attorney's oath does not exempt from professional norms those attorneys who are not fully compensated by their clients. Indeed, the ABA Standards for Criminal Justice 4–3.9 provides, "Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program." (2nd ed. 1980)[4]. Whether disciplinary action should be initiated as the result of counsel's service is to be determined separately from the resolution of Williams' petition.

Trial counsel testified in the post-conviction hearing that he had believed his motion to withdraw would be granted on the first day of trial, despite the trial court's earlier adverse ruling. Not only was that belief erroneous, but it also prompted counsel to risk violation of Disciplinary Rule 6–101(A)(2), Code of Professional Responsibility: "A lawyer shall not handle a legal matter without preparation adequate in the circumstances."

■ The most serious result of counsel's conduct was failure to present any of the defense witnesses who might have substantiated Williams' alibi. Absent a strong showing to the contrary, we normally presume that counsel failed to present an alibi defense because it was not indicated by the circumstances or, if indicated, was rejected upon due deliberation. *Cf., Bennett v. State* (1984), Ind., 470 N.E.2d 1344. Williams has effectively overcome this presumption. Trial counsel testified that he would have presented the defense if

---

**3.** Williams also was charged with being an habitual offender, Ind.Code § 35–50–2–8, but that charge was dismissed on the State's motion after the verdict on the robbery charge was returned.

**4.** The legislature has subsequent to the trial in this case prohibited courts from granting motions to withdraw based on a defendant's failure to meet financial obligations to counsel if such motions are filed within thirty days of the omnibus date. Ind.Code § 35–36–8–2(a) (Burns 1985 Repl.).

Williams had the money to depose the alibi witnesses or pay their traveling costs. Despite this desire to assign blame to Williams' indigency, it is plain that counsel's failure to present an alibi defense for Williams was a result of affirmative neglect, not considered professional decision making. While defense counsel is not ineffective when he fails to present all evidence in support of the defense position, counsel's representation cannot be deemed adequate or effective when he fails to produce any evidence at all from available sources in support of a defense. *Sotelo v. State* (1980), 273 Ind. 694, 408 N.E.2d 1215.

■ Trial counsel should have brought the financial handicaps inherent in the case to the attention of the trial court long before the scheduled trial date. He should have subpoenaed the alibi witnesses or, at the least, obtained affidavits from them through the mail. Instead, counsel remained silent until the first day of trial, and the jury never heard Williams' response to the charges. Although counsel's failure to present exculpatory evidence may not constitute ineffective assistance where that evidence is introduced to the jury through other witnesses, *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, this case does not present such a situation.

In addition to revealing substandard representation, the record graphically portrays a breakdown in the adversarial process which casts substantial doubt on the reliability of Williams' trial, as required by *Strickland.* Williams' fate was determined before he stepped into the courtroom on the first day of his trial. Counsel was so ineffective as to deprive Williams of even an opportunity to present a defense, a central right in our criminal justice system. As the Seventh Circuit has aptly stated:

> The Constitution, unlike the judicial oath, does not go so far as to promise equal justice to the poor and to the rich. Yet it does not leave the poor to a representation which is in any aspect ... shockingly inferior to what may be expected of the prosecution's representation. While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.

*United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir.1975).

The rationale underlying this decision is similar to that in cases in which we have found due process violations where an attorney had insufficient time to prepare a defense for his client. *E.g., Sweet v. State* (1954), 233 Ind. 160, 117 N.E.2d 745. Whether the catalyst for ineffective assistance of counsel is unreasonable time constraints or failure to perform, the result is the same: the client is denied the opportunity to present a defense to which he is constitutionally entitled.

■ It is the compilation of errors and omissions by counsel which creates the necessity for reversal in this case. Counsel's failure to interview eyewitnesses to the crime, standing alone, does not constitute ineffective representation. *Crisp v. State* (1979), Ind., 394 N.E.2d 115. Counsel's failure to subpoena witnesses or to present their testimony also may not violate the Sixth Amendment. *McCann v. State* (1983), Ind., 446 N.E.2d 1293; *Roberts v. State* (1981), Ind.App., 419 N.E.2d 803. However, while each error of counsel individually may not be sufficient to prove ineffective representation, an accumulation of such failures may amount to ineffective assistance. *Shull v. State* (1981), Ind.App., 421 N.E.2d 1.

This case also may be distinguished from earlier cases in which this Court determined that counsel was not ineffective when he failed to investigate an alibi, offer a motive of alibi or present that defense. In such cases, this Court, implicitly or explicitly, has found that the defendant was not prejudiced by the omission. For instance, in *Williams v. State* (1984), Ind., 458 N.E.2d 227, this Court affirmed the defendant's conviction when the alibi defense neglected by counsel consisted of the defendant's mother, who could have provided only equivocal support for it. Such a case is not presented here.

In *Foster v. State* (1974), 262 Ind. 567, 320 N.E.2d 745, defense counsel failed to

produce the woman with whom the defendant was allegedly staying in Shaw, Mississippi, when the crime occurred. However, the defendant's mother, with whom Foster lived, and his second cousin, who lived in Shaw, testified at trial that Foster was in Shaw when the crime was committed. In denying Foster's claim of ineffective counsel, this Court noted that the missing witness' testimony would not necessarily have been more convincing than the other alibi witnesses. Of course, the jury hearing Foster's case at least was presented with the alibi.

We find a useful comparison in *Battles v. State* (1985), Ind., 486 N.E.2d 535, in which this Court reached a different result with similar facts. At the final pre-trial conference, the public defender provided the names of three alibi witnesses living in Florida. Counsel asked the court for a continuance to permit the witnesses to gather funds, apparently to pay for travel to Indiana. However, counsel stated that he would prefer to proceed to trial without the benefit of the witnesses in the absence of a continuance. The trial court denied the continuance. At the conclusion of the State's case-in-chief, defense counsel requested that the court provide travel funds to allow the appearance of the alibi witnesses. The court refused to do so.

On appeal, Battles claimed that counsel was ineffective for failing to travel to Florida to take the depositions of those witnesses. Battles had been identified at trial as the perpetrator by his alleged accomplice and her mother, who was a friend of Battles. This Court ruled that counsel was not ineffective because the trial court likely would have decided against providing public funds to cover the costs of the Florida depositions. While the rationale for this conclusion is not noted in the opinion, it seems apparent that this Court must have considered the strength of the evidence against Battles, the tardiness of counsel's notice of alibi witnesses, the distant location of the witnesses, and counsel's statement that he would go to trial without them.

Had trial counsel made a timely motion to withdraw and disclosed the effects of Williams' indigency to the trial court before the first day of trial, it is altogether possible that the trial court would have permitted the withdrawal, appointed a public defender, and ordered funds for depositions. However, this case is not as serious as *Thomas v. State* (1969), 251 Ind. 546, 242 N.E.2d 919, in which the public defender had three months to investigate Thomas' case but waited until the night before trial to contact a key alibi witness. The witness would have testified that he committed the offense and that Thomas did not. The State's case consisted of the uncorroborated testimony of the victim whose view of the defendant's face was at a distance of 20 feet and limited to 30 seconds.

In reaching our conclusion here, we have reminded ourselves that "[i]f every mistake or oversight made in the preparation of a case or at trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then a majority of all criminal defendants might validly assert such a claim." *Smith v. State* (1979), 272 Ind. 216, 218, 396 N.E.2d 898, 900. However, where those mistakes and oversights mount to do substantial damage to the defense, such a claim must prevail.

Because the evidence in this case clearly and unerringly brings us to a conclusion opposite to that reached by the post-conviction court, we reverse its ruling. We find that Williams was denied effective assistance of trial counsel as guaranteed by the Sixth Amendment and grant Williams a new trial. In light of this ruling, we will not consider the other issues raised by Williams.

The conviction is reversed, and this cause is remanded to the trial court for a new trial.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., concurs in result.