**Brian K. McCARY, Appellant–
Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 49A02–0004–PC–226.

Court of Appeals of Indiana.

Dec. 11, 2000.

Rehearing Denied Feb. 13, 2001.

Susan K. Carpenter, Anne–Marie Alward, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Petitioner–Appellant Brian K. McCary appeals the denial of his petition for post-conviction relief. We reverse and remand.

### ISSUES

McCary raises two issues for our review, which we restate as:

I. Whether the post-conviction court erred in determining that McCary was afforded effective assistance of trial counsel.

II. Whether the post-conviction court erred in determining that McCary's claim of ineffective assistance of appellate counsel was barred by res judicata.

### FACTS AND PROCEDURAL HISTORY

McCary was charged by information on September 21, 1993, with attempted murder, a Class A felony; resisting law enforcement, a Class D felony; and carrying a handgun without a license, a Class A misdemeanor, in connection with events that occurred on September 20, 1993. After a jury trial, he was convicted as charged. He was subsequently given a forty-year sentence. His conviction was affirmed by this court on direct appeal. *See McCary v. State,* No. 49A02–9412–CR–751, 657 N.E.2d 204 (Ind.Ct.App. November 6, 1995). One of the issues on direct appeal was whether trial counsel was ineffective for failing to investigate and call an Indianapolis police officer as a witness.

McCary filed a pro se petition for post-conviction relief, which was amended when the State Public Defender entered an appearance. After an evidentiary hearing, the post-conviction court denied McCary's petition. In doing so, the post-conviction court concluded that the issue of trial counsel's effectiveness was barred by the doctrine of res judicata. The post-conviction court further concluded that even if the issue was not barred, the evidence indicated that trial counsel's failure to call the police officer was a matter of strategy. McCary now appeals.

### DISCUSSION AND DECISION
### STANDARD OF REVIEW: POST–CONVICTION RELIEF

In a post-conviction relief proceeding, the petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1(5). On appeal from a denial of post-conviction relief, the appellant has the burden to show that the "evidence is without conflict and leads to a conclusion opposite the judgment reached by the post-conviction trial court." *Hackett v. State,* 661 N.E.2d 1231, 1233 (Ind.Ct.

App.1996), *trans. denied* (quoting *Wickliffe v. State*, 523 N.E.2d 1385, 1386 (Ind.1988)).

## ISSUE I: EFFECTIVENESS OF TRIAL COUNSEL

McCary contends that trial counsel was ineffective in failing to call a certain police officer as a witness. Ineffective assistance of counsel claims are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000). To succeed, the petitioner must demonstrate both deficient performance and resulting prejudice. *Id.* A deficient performance is that which falls below an objective standard of reasonableness. *Id.* Prejudice exists when "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." *Cook v. State*, 675 N.E.2d 687, 692 (Ind.1996).[1]

The evidence in the present case, as found by this court on direct appeal, indicates that on the evening of September 20, 1993, Officer Anthony Finnell of the Indianapolis Police Department learned at roll call that police were looking for a blue and white Oldsmobile associated with McCary and Ernest Castlel. While on patrol later that evening, Officer Finnell found the car parked at a convenience store. Officer Finnell observed as McCary and a man later identified as Antonio Williams left the store and drove away. Officer Finnell followed the car a short distance before activating his lights and directing McCary, who was driving the car, to pull to the side of the road. McCary immediately pulled into an alley, jumped from the car while it was still moving, and ran south away from the scene. Officer Finnell advised the radio dispatcher of what had occurred and provided a physical description of McCary. Officer Finnell proceeded to the car to secure Williams.

As Officer Finnell was placing Williams in handcuffs, both men heard gunfire coming from south of where they were standing. Officer Finnell pushed Williams to the ground and advised the dispatcher that he was being fired upon. Six shots were fired before Finnell drew his gun and looked over the top of the car. Officer Finnell saw a man standing a short distance away with a build similar to McCary's and wearing similar dark clothing. When Officer Finnell stood up with his gun drawn, the man fled.

Police officers later located and arrested McCary, and he was charged with the attempted murder of Officer Finnell and carrying a handgun without a license. *See* Memorandum Decision, p. 2–3 (R. 282–83). At the trial on the charges, Officer Finnell testified that at the time of the shooting he did not know whether McCary was the shooter. However, he also testified that in the police station interview room McCary had stated to him that "I wasn't trying to hurt you." *Id.* at 4. A witness also testified that she overheard a conversation between McCary and a friend in which McCary stated that he and the police had exchanged gunfire and that the police had fired the first shot. *Id.* at 3.

The post-conviction court found that as off-duty Indianapolis Police Officer Tracy Murphy was backing out his driveway near the alley where the shots were fired at Officer Finnell he saw a man walking down a nearby alley "with a gun in his hand." Officer Murphy reported what he saw, and

1. In *State v. Holmes*, 728 N.E.2d 164, 175 n. 7 (Ind.2000), our supreme court noted that the U.S. Supreme Court "recently revisited the process for determining whether a defendant has been denied the right to counsel guaranteed by the Sixth Amendment." The court explained that in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court "instructed that *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), should not be read to modify the *Strickland* test by requiring 'a separate inquiry into fundamental fairness when [the defendant] is able to show that his lawyer was ineffective and that his ineffectiveness affected the outcome of the proceeding.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1513).

his report was mentioned in the police report produced by the State during pre-trial discovery. (Finding of Fact # 5; R. 124). Officer Murphy was familiar with the man he saw in the alley, but he didn't know the man's name. (Finding of Fact # 6; R. 124). Officer Murphy later picked Aaron Blanche, a/k/a "Shaney," out of a lineup as the man he saw in the alley, and he repeated that identification at the post-conviction hearing. (Finding of Fact # 7; R. 124).

The post-conviction court also found that no one from the State or defense contacted Officer Murphy prior to trial, and Officer Murphy did not contact anyone about what he observed. (Finding of Fact # 8; R. 125). McCary's defense at trial was that "although he was the driver of the car stopped by Officer Finnell, and he ran from the police, he did not have a gun that night and did not shoot at anyone." (Finding of Fact # 9; R. 125). Officer Finnell testified at trial that he saw several individuals in the area the shots came from, but he couldn't see anything in anyone's hand and he could not identify the shooter. *Id.*

The post-conviction court further found that at trial McCary pointed to Shaney as the probable shooter. (Finding of Fact # 10; R. 125). The post-conviction court noted that trial counsel testified at the post-conviction hearing that "had he known about Officer Murphy's identification of Blanche, he still might not have called him as a witness at trial." (Finding of Fact # 11; R. 125). The post-conviction court concluded that "trial counsel's decision to refrain from calling [Officer] Murphy was a strategy decision and did not amount to ineffective assistance of counsel [because] [t]rial counsel testified that he was aware of the fact that another person had been seen in the area of the alleged crime at the time of the shooting and that he made a decision not to find and call that

person at trial." (Conclusion of Law # 10; R. 128).

Our review of the record discloses that the probable cause affidavit filed in this case stated that Officer Murphy "heard the shots being fired and exited his residence where he lives in the area."[2] Officer Murphy "gave chase of the suspect; however, he lost him in the area of 2800 N. Gale Street." (T.R. 277). At the post-conviction hearing, trial counsel acknowledged that he reviewed the probable cause affidavit in preparing for trial. He also acknowledged that he did not interview Officer Murphy because he didn't "know that there was much connection" and because Officer Murphy's testimony wouldn't have "ma[d]e that much difference." (R. 161). Trial counsel stated that it was a matter of strategy not to interview the officer. Trial counsel supported his failure to interview Officer Murphy by observing that many people carry guns in the general area that the shooting took place.

Our review of the record also discloses that trial counsel, in furtherance of his position that McCary was not the shooter, called a Latoya Harrison at trial to establish that immediately after the shooting, a "scared" Shaney came to her apartment at 2835 N. Gale and asked to use the phone. This apartment was near the shooting but was in the opposite direction of where McCary was later apprehended. The witness testified that Shaney gave a handgun to a friend to "keep" for him. The witness also testified that Shaney left and returned the next day to retrieve the gun. In closing argument, trial counsel asked the jury, "Were there other people in this area who we know had handguns?" He answered the question by saying, "Yes. And one of them was named Shaney, because the gun was seen." (R. 259).

In determining whether trial counsel was ineffective, we must be cog-

---

2. Officer Murphy's testimony at the post-conviction hearing casts some doubt upon the accuracy of the probable cause affidavit. It does not appear that Officer Murphy actually heard the shots.

nizant that "[i]f every mistake or oversight made in the preparation of a case or at trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then a majority of all criminal defendants might validly assert such a claim." *Williams v. State,* 508 N.E.2d 1264, 1269 (Ind.1987) (quoting *Smith v. State,* 272 Ind. 216, 218, 396 N.E.2d 898, 900 (1979)). Thus, we entertain a strong presumption that counsel rendered adequate assistance and that he made all significant decisions in the exercise of reasonable professional judgment. *Holmes,* 728 N.E.2d at 172. As our supreme court has observed, "even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client." *Id.* (citing *Strickland,* 104 S.Ct. at 2065). Furthermore, isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* However, in order to make a reasonable tactical decision, trial counsel must have adequately investigated the client's case because "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland,* 104 S.Ct. at 2066).[3]

■ In the present case, McCary's defense centered upon creating a reasonable doubt that he was the shooter by pointing to Shaney's activities immediately after the shooting occurred. It was for this purpose that trial counsel called Harrison to establish that a "scared" Shaney entered Harrison's apartment in the 2800 block of N. Gale immediately after the shooting and asked one of the apartment's occupants to "keep" his gun for him. At the time that he was conducting his pre-trial develop-

ment of this defense, trial counsel had before him a probable cause affidavit that indicated that Officer Murphy had chased a "suspect" immediately after the shooting in the area of 2800 N. Gale Street. Yet, trial counsel made no effort to contact Officer Murphy and to ascertain whether this "suspect" was Shaney. This lack of effort on trial counsel's part cannot be considered a strategic decision. As the court noted in *Holmes,* strategic decisions are made after reasonable investigations are conducted. In fact, there is no reasonable explanation for such a lack of effort. Even in light of the strong presumption of effectiveness, we are convinced that under these circumstances trial counsel's lack of investigation fell far below the objective standard of reasonableness set forth in *Strickland.*

■ The question remains, however, as to whether trial counsel's failure to conduct a reasonable investigation caused prejudice to McCary. We note that had he conducted a reasonable investigation, trial counsel would have had a highly credible witness in Officer Murphy. Officer Murphy could have (1) identified the "suspect" as Shaney; (2) established that Shaney was armed with a handgun; and (3) placed him in the immediate vicinity of Harrison's apartment. This testimony would have significantly bolstered Harrison's testimony. It also would have forced the State to explain why it listed Officer Murphy as a witness but did not call him and why Shaney was no longer a "suspect" in the shooting. Given the circumstantial nature of the State's attempted murder case against McCary, we must conclude that there is a reasonable probability that the result would have been different but for trial counsel's inadequate representation. Furthermore, we must conclude that the post-conviction court's conclusion to the contrary was clearly erroneous.

---

3. Also *see, Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) (holding that the adversarial testing process "generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies . . . .").

## II. INEFFECTIVENESS OF APPELLATE COUNSEL/RES JUDICATA

McCary contends that counsel on direct appeal was ineffective in not developing a record in support of his ineffectiveness of trial counsel claim.[4] McCary also contends that the post-conviction court erred in determining that his claim of ineffectiveness of appellate counsel was barred by res judicata.

■ The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Ben–Yisrayl,* 729 N.E.2d at 106. Thus, McCary must establish that appellate counsel was deficient in his performance and that this deficiency resulted in prejudice.

On direct appeal, counsel argued that "McCary received ineffective assistance of counsel at trial and during the prosecution of his motion to correct error." (R. 175). With regard to trial counsel's failure to investigate and call Officer Murphy as a witness at trial, counsel wrote:

> Consideration of the affidavit for probable cause ... yields further concern with regard to witnesses who were not summoned. The affidavit states that an Officer Murphy who lived in the area heard the shots, came out of his home, and gave chase to the "suspect," losing him in the "area of 2800 North Gale...."
>
> We also know that [Shaney] had been in the area, had a gun and turned up, shortly after the shooting, at Latoya Harrison's house at 2835 North Gale near the middle of the block where Officer Murphy was said to have lost the suspect he was chasing—the area of 2800 Gale near 28th and Gale. The result of this analysis is the question "Why didn't Murphy testify?" His testi-

mony, it would seem, would have made clear, when taken with other evidence that was heard by the jury, that it was improbable that the person Murphy saw was McCary and, at the same time, more probable than not that the person was [Shaney], a man we know had a gun. *Perhaps trial counsel interviewed Murphy and found that the affidavit was incorrect or false so elected not to call Murphy but perhaps he did not.* Were this so, of course, Murphy's denial of what is claimed in the affidavit would seem a useful topic for cross-examination of the detective. *On the record available here we cannot know why Murphy did not testify nor why the matter was not raised on cross of the police witnesses with knowledge of the case.*

(R. 208–09; Brief of Appellant on Direct Appeal at 34–35). (Emphasis supplied). (Citations to trial record omitted). In his "Conclusion and Prayer for Relief," counsel on direct appeal asked that this court "[r]eserve to him the right to further develop the allegations concerning ineffective assistance without waiver...." (R. 213; Brief of Appellant on Direct Appeal at 39).

In our memorandum decision on direct appeal, we held that in order to prevail on this type of claim, an appellant must make a showing that the evidence that would have been produced would likely have changed the result of trial. Memorandum Decision at 6. Not surprisingly, we then held that "[h]aving failed to demonstrate what a more thorough investigation would have revealed, McCary has failed to establish that he suffered prejudice as a result of an allegedly inadequate investigation, and his claim of ineffective assistance of counsel in this regard is without merit." Memorandum Decision at 7.

4. The State advocates review of this matter as a failure to raise a claim on direct appeal. Thus, the State encourages us to apply *Bieghler v. State,* 690 N.E.2d 188 (Ind.1997), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998), and related cases, to McCary's current appeal. The State misconstrues the nature of McCary's claim, and *Bieghler* and related cases, to the extent they hold that the decision of what issues to raise is almost unassailable, are not applicable.

In essence, counsel on direct appeal raised an issue while conceding that he didn't have the record to support it. Counsel did not avail himself of the well-established procedure set forth in *Hatton v. State,* 626 N.E.2d 442 (Ind.1993) and *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977), whereby an appellant may develop a record by pursuing a post-conviction claim instead of a direct appeal. This failure to develop the record constitutes deficient performance under *Strickland.*[5] Furthermore, as demonstrated by our resolution of Issue I above, this failure was prejudicial. Accordingly, McCary was deprived of effective assistance of counsel on direct appeal.

In determining that this issue was barred by res judicata, the post-conviction court cited *Woods v. State,* 701 N.E.2d 1208 (Ind.1998), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). We question the application of *Woods* to this case as it was not handed down until well after appellate counsel on direct appeal inexplicably decided in 1995 to forgo development of the record and to file his appellate brief. *See McIntire v. State,* 717 N.E.2d 96, 102 (Ind.1999) (holding that *Woods* applies prospectively). Even if *Woods* were applicable, we believe that it would not bar McCary's claim. We recognize that the court in *Woods* held that "if ineffective assistance of trial counsel is raised on direct appeal by a *Davis* petition or otherwise, the issue will be foreclosed from collateral review." *Id.* at 1220. However, we further recognize that the court did not preclude all claims of ineffectiveness of appellate counsel. *Id.* at 1221–22. This is especially true where, as here, the ineffectiveness claim is based upon something other than appellate counsel's strategic decision to exclude a particular issue. *Id.* at 1221.

Furthermore, we note that in a recent post-*Woods* case our supreme court affirmed the post-conviction court's finding of appellate counsel's deficient performance. *See Chijioke Bomani Ben–Yisrayl, f/k/a Greagree Davis v. State,* 738 N.E.2d 253 (Ind.2000). In that case, counsel on direct appeal raised some issues of trial counsel's ineffectiveness but failed to raise the issue of trial counsel's failure to present mitigation evidence. Memorandum Decision at 22. The supreme court held that appellate counsel's decision, in the face of the risk of res judicata, "could not be explained by any reasonable strategy." *Id.*

Generally, this court adheres to a policy not to allow a petitioner to raise on collateral appeal an issue already decided by this court on direct appeal. Although the post-conviction court, McCary, and the State refers to this policy as the doctrine of res judicata, we believe that the doctrine is more accurately denominated the law of the case. "[T]he law of the case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.'" *State v. Lewis,* 543 N.E.2d 1116, 1118 (Ind.1989) (quoting *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816–18, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811, 831 (1988)). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances...." *State v. Huffman,* 643 N.E.2d 899, 901 (Ind.1994) (quoting *Lewis*). While "finality and fairness are both important goals," we do not hesitate to choose the latter where the goals are in apparent conflict. *Id.* Here, where the actions of both trial and appellate counsel cannot be attributed to anything other than ineffectiveness, and where such

---

**5.** The State contends that counsel on direct appeal cited in the appellate brief to an affidavit filed by Officer Murphy that was consistent with Officer Murphy's later testimony during the post-conviction hearing. The State completely misreads the record. Appellate counsel cited to the probable cause affidavit, not an affidavit outlining Officer Murphy's testimony.

ineffectiveness is potentially prejudicial, we have chosen to address the issues raised by McCary on collateral appeal.

### CONCLUSION

McCary has established that both trial and appellate counsel failed to provide effective assistance of counsel. Furthermore, McCary's claims are not barred by either the doctrine of res judicata or law of the case. Thus, the post-conviction court's conclusions are clearly erroneous. We reverse and remand for further proceedings.

DARDEN and MATTINGLY, JJ., concur.