*87 BROWN, Judge,
dissenting.
I respectfully dissent as I conclude that the cumulative effect of trial counsel’s errors entitles McCullough to post-conviction relief. As acknowledged by the majority, “[ejrrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively.” Pennycuff v. State, 745 N.E.2d 804, 816-817 (Ind.2001). See also Grinstead v. State, 845 N.E.2d 1027, 1036-1037 (Ind.2006) (“Certainly, the cumulative effect of a number of errors can render counsel’s performance ineffective.”). The verdict in this case rests primarily upon L.D.’s statements and “logic dictates that ‘a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.’ ” Hilliard v. State, 609 N.E.2d 1167, 1169-1170 (Ind.Ct.App.1993) (quoting Strickland v. Washington, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984)).
McCullough’s trial counsel was preparing to try E.M.’s case when, four days before E.M.’s trial date, her case was dismissed and L.D.’s case was substituted for trial. McCullough’s trial counsel unsuccessfully sought a continuance.
With respect to the uncharged misconduct, trial counsel did not object during the direct examination of L.D. when she addressed uncharged misconduct by indicating that McCullough had molested her in second grade, first grade, kindergarten, and before preschool even though this testimony was inadmissible under Ind. Evidence Rule 404(b).[16] At the post-conviction hearing, trial counsel recognized the reference to uncharged misconduct and had no explanation or tactical reason'for failing to object.
As to the California Claim, trial counsel acknowledged that such evidence was inadmissible under Ind. Evidence Rule 404, but chose to expose the jury to the California Claim because “if it’s demonstratively false, it’s a powerful impeachment tool, to show that demonstratively false prior accusations of the same kind have been made.” Post-Conviction Transcript at 116. Trial counsel based his belief that the California Claim was false on “[pjrimarily medical evidence but also what was related to [him] about her visit to California by family members” as well as McCullough’s testimony. Id. However, trial counsel did not introduce medical evidence even though such a report existed, or the testimony of family members, or any other evidence to prove the falsity of the California Claim.[17]
*88 Id. at 125-126. McCullough’s counsel also did not object when the prosecutor, clearly improperly, referred to uncharged misconduct during closing argument or during rebuttal when the prosecutor stated: “California, I wish I could charge it, but that’s not my jurisdiction. I wish I could charge in California what he did to her, what she testified that he did to her, what she told Diane Bowers that he did to her.” Trial Transcript at 802 (emphasis added). Moreover, McCullough’s trial counsel did not request a limiting instruction or admonishment to indicate that the jury’s use of the evidence of the California Claim was limited to impeachment purposes.[18] See Ind. Evidence Rule 105 (“When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly.”). In this case, where the only direct evidence supporting the charges was the testimony of the accuser, it is highly probable that the jury drew the forbidden propensity inference in reaching its verdicts. See Sudling v. State, 679 N.E.2d 988, 992-994 (Ind.Ct.App.1997) (holding that the trial court erred by permitting testimony regarding uncharged acts of sexual misconduct by the defendant and that a substantial likelihood existed that the forbidden inference contributed to the verdict given that the only evidence of each instance of child molestation came from the victims), reh’g denied; Tucker v. State, 646 N.E.2d 972, 978 (Ind.Ct.App.1995) (holding that trial counsel’s performance in failing to object, move to strike, or request an admonishment of the jury with respect to the defendant’s criminal history was deficient, and that it could not be said that the references to the defendant’s criminal history did not impact the jury’s decision where the evidence was not overwhelming, and reversing for a new trial).
Trial counsel’s cross-examination of Bowers and Detective Faber consisted solely of two questions to each. Specifically, trial counsel asked Bowers whether she personally witnessed any of the allegations and whether she was “just going on what [L.D.] told her.” Trial Transcript at 649. Similarly, the cross-examination of Detective Faber consisted of asking her whether she was an eyewitness to any of the allegations against McCullough and whether she had any personal knowledge about whether the allegations occurred. Id. at 657. Among other questions that might have constituted adequate cross-examination, trial counsel did not ask any questions which would have revealed that Detective Faber 1) had not read the preliminary report of alleged child abuse or neglect from Riley Hospital or Exom-Pope’s 811 Report; 2) had not asked Sarah about a custody dispute with McCullough regarding E.M. and M.M.; 3) did not discover that Sarah allegedly failed to pay child support for E.M. and M.M.; 4) was not aware that Sarah might be concerned about future arrests for non-support because she was expecting a fourth child and had no steady employment; 5) was unaware that Sarah had applied for public assistance for E.M. and M.M.; 6) attached no importance to the effects on L.D. of Sarah’s mental state, history of substance *89 abuse, and attempted suicide; 7) was on notice that L.D. had some problems but made no inquiry as to their nature; 8) was not concerned about the time lapse between L.D.’s first report to the grandmother and the first interview nine weeks later; and, 9) did not inquire as to whether L.D. may have feared discipline from McCullough for more recent behavior.
With respect to McCullough’s arguments regarding his trial counsel’s failure to present expert testimony or to present evidence critical of the State’s investigation, trial counsel testified at the post-conviction hearing that he intended to raise the theory of false memories and point out weaknesses in the testimony of Bowers and Detective Faber through Perkins’s testimony. After the trial court limited Perkins’s testimony to information that paralleled that provided by the State in its direct examination, trial counsel did not argue that the court’s ruling was erroneous, make an offer of proof regarding Perkins’s testimony, or present testimony that directly attacked the State’s investigation. At the post-conviction hearing, trial counsel indicated that he desired to expose weaknesses in the State’s investigation through Perkins, that this was a “critical part” of the evidence, and that he thought the ease was prejudiced by not presenting such evidence. Post-Conviction Transcript at 256-257. At the oral argument held in this appeal, the State acknowledged: “Marty Perkins’ testimony got curtailed by the trial court, I think probably incorrectly.” Oral Arg. at 00:21:40, available at https://mycourts.in.gov/arguments/ default.aspx?view=detail&id=1345. The State also conceded that McCullough’s trial counsel should have made an offer of proof and that his performance in that respect was below the standard of reasonableness based on prevailing professional norms. Id. at 00:21:50.
McCullough also argues that his trial counsel was ineffective for failing to call E.M. as a witness and failing to present evidence of Sarah’s motives. Specifically, McCullough argues that E.M. “would have provided a basis for inferring that Sarah had induced L.D. as well as E.M. falsely to accuse McCullough of sexual molestation.” Appellant’s Brief at 84-37. McCullough argues that “[pjroof that Sarah induced E.M. to bring false charges against her father is circumstantial evidence that she may have engaged in similar behavior with L.D.” Id. at 35. McCullough asserts that evidence of Sarah’s personal and financial motives to wrest custody of E.M. and M.M. from McCullough was available to trial counsel and that this evidence provided a motive to induce L.D. to accuse McCullough of sexual misconduct. He argues that “[h]ad defense counsel presented the available evidence of Sarah’s motives falsely to induce charges against [McCullough], plus her attempt to induce E.M. to claim that [McCullough] had abused her, the trial court would have been bound constitutionally to permit the evidence to be heard.” Id. at 36-37. McCullough contends that “[h]ad the jury been so informed there is a reasonable probability that the outcome of the trial would have been different.” Id. at 37.
The State argues that E.M.’s testimony would have been inadmissible as it would have been entirely based on hearsay. The State also argues that the relevance of E.M.’s testimony is tenuous at best because E.M. “would have been testifying about statements made to her by her mother in an unrelated case and [McCullough] would have been asking the jury to infer from the communication between E.M. and Sarah that a similar conversation occurred between L.D. and Sarah.” Ap-pellee’s Brief at 24. In his reply brief, McCullough argues that “the statements attributed to Sarah by E.M. were not *90 hearsay, but were verbal acts (words having independent legal significance apart from their truth) constituting an attempt to induce E.M. to bear false witness against her father.” Appellant’s Reply Brief at 17.
To the extent that the State suggests that E.M.’s testimony would not have been relevant, I disagree. The record reveals that L.D.’s sister E.M. was told by Sarah that McCullough had touched her inappropriately, that E.M. raised allegations that McCullough molested her after she was placed in Sarah’s custody, and that E.M. recanted the allegations shortly before trial. Under the circumstances, I cannot say that this evidence is irrelevant. With respect to the State’s argument that E.M.’s testimony would constitute inadmissible hearsay, I also disagree. See 13 Miller, Indiana Practice § 801.305 (“Verbal conduct to which the law attaches legal significance, such as the contract on which suit is based, is not hearsay, although it is an out-of-court declaration.... Such evidence is offered to prove that the statements were made, rather than to prove the truth of the statements; hence the evidence is not hearsay.”).
McCullough’s trial counsel testified at the post-conviction hearing that E.M.’s allegations against McCullough arose for the first time after she was removed from McCullough’s custody and placed in Sarah’s custody, that trial counsel was aware that E.M. had recanted her allegations against McCullough, and that the case against McCullough involving E.M. was dismissed. Trial counsel indicated that he was more prepared to try the case involving E.M. than the case involving L.D. when E.M.’s case was dismissed. Trial counsel also indicated that he had access to therapy notes prepared by E.M.’s counsel- or which gave him some information as to whether there may have been improper influence with respect to E.M. When asked why this evidence was never presented at trial, McCullough’s trial counsel indicated that he had no tactical explanation.
During direct examination, McCullough’s post-conviction counsel asked trial counsel about an arrest warrant for Sarah issued about a month before the allegations made by L.D. based upon a contempt citation for her failure to pay support for E.M. and M.M., and trial counsel admitted that this evidence might have suggested a retaliatory motive for Sarah. Trial counsel also testified that he believed that Sarah “almost certainly” blamed McCullough for the writ body attachment warrant, and stated that he did not have a tactical explanation for not introducing evidence involving possible improper influence by Sarah on E.M. Post-Conviction Transcript at 145.
Additionally, trial counsel failed to tender or object to the trial court’s failure to give the instruction mandated by Ind.Code § 35-37-4-6(h) regarding the jury’s evaluation of hearsay statements received pursuant to the Protected Person’s Statute. The State relied heavily on the statements of the grandmother and the recorded video emphasizing their consistency with L.D.’s trial testimony. The prosecutor argued that the grandmother’s hearsay evidence supplied corroboration of L.D.’s trial testimony. Trial counsel testified he was aware of the statute and had no tactical reason to explain his omission.
While some of the errors by trial counsel may not individually be sufficient to prove ineffective representation, when viewed cumulatively counsel’s overall performance fell below the prevailing professional norms, and in light of the fact that the State’s case rested almost entirely on L.D.’s statements, there is a probability sufficient to undermine confidence in the outcome that, but for trial counsel’s errors, *91 the result of the proceeding would have been different. Thus, I conclude that McCullough was denied the effective assistance of counsel. See Smith v. State, 511 N.E.2d 1042, 1046 (Ind.1987) (“In the case before us the accumulation of errors mandates a finding of ineffective assistance.”); Williams v. State, 508 N.E.2d 1264, 1268 (Ind.1987) (“It is the compilation of errors and omissions by counsel which creates the necessity for reversal in this case.”).
For the foregoing reasons, I respectfully dissent and would reverse the post-conviction court’s denial of McCullough’s petition for relief.

. Ind. Evidence Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
The State does not respond specifically to McCullough’s reliance on Rule 404(b) or argue that any of the exceptions would have applied.

. A medical report signed by Dr. Roberta Hibbard indicated her following impression of L.D.: "It is my impression that [L.D.'s] anogenital examination is within normal limits. This examination is consistent with and neither supports nor negates concerns of sexual contact.” Petitioner’s Exhibit 13. When asked whether he concluded from the report that he did not have evidence of physical manifestations of the California incident, McCullough’s trial counsel stated: "Yes, within normal limits indicated to me, lack of any major physical trauma you would expect. Again in conjunction with Mr. Perkins, who *88 had investigated these types of offenses and his familiarity with what should have been present, had it been true. That seemed inconsistent.” Post-Conviction Transcript at 136— 137. To the extent that the reliance of McCullough’s trial counsel on the medical report to support his belief in the falsity of the California Claim was reasonable, he did not introduce the medical report at trial.

. The post-conviction court did not explicitly address this issue in its conclusions of law.